[No. H033161. Sixth Dist. Nov. 25, 2009.]

ALIGN TECHNOLOGY, INC., Plaintiff and Appellant, v.
BAO TRAN et al., Defendants and Respondents.

COUNSEL

Paul, Hastings, Janofsky & Walker, Thomas A. Counts and T. Lee Kissman for Plaintiff and Appellant.

Robinson & Wood, Hugh F. Lennon and Ann A. Nguyen for Defendants and Respondents.

OPINION

DUFFY, J.—California's compulsory cross-complaint statute prohibits a party from asserting a claim if, at the time the party answered a complaint in prior litigation, it failed to allege in a cross-complaint any then existing, related cause of action against the plaintiff. (Code Civ. Proc., § 426.30, subd. (a).)[1] Few cases have construed the relatedness requirement of the compulsory cross-complaint statute. Accordingly, whether an unasserted

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

claim is a "related" cause of action that is barred by section 426.30 can be a difficult question to answer.

In January 2008, appellant Align Technology, Inc., sued its former employee, Bao Tran,[2] for (among other things) breach of contract and conversion of patents belonging to the company. Tran demurred, claiming that the action was barred under the compulsory cross-complaint statute. He asserted that Align, in a prior state court action in San Francisco (the prior suit), had sued Tran, he had cross-complained for wrongful termination, and Align had failed to assert the current claims at the time it answered the cross-complaint. The court agreed that Align's claims were barred under section 426.30 because they should have been raised in the prior suit, and it sustained Tran's demurrer without leave to amend.

Align contends the claims asserted in the present action were not matters that it was required to assert as a compulsory cross-complaint in the prior suit. It argues that some of the claims were unknown at the time it answered Tran's cross-complaint and that the other claims were not "related" to Tran's cross-complaint; accordingly, none of the claims are barred because of Align's failure to allege them in the prior suit. Align argues further that the court abused its discretion by failing to grant Align leave to amend after sustaining Tran's demurrer.

We conclude that the allegations of the complaint included claims that were barred on their face by the compulsory cross-complaint statute because they were claims logically related to Tran's cross-complaint that should have been asserted in the prior suit. We hold further that, based upon certain allegations in the complaint and representations made by counsel both at the hearing on the demurrer and on appeal, Align may be able to assert claims against Tran that did not exist when it answered Tran's cross-complaint in the prior suit and would thus not be barred under section 426.30. Accordingly, Align should have been granted leave to amend. We will therefore reverse the judgment and remand the case with instructions that the court enter an order sustaining the demurrer with leave to amend.

---

[2] Align also sued Tran & Associates, a law firm founded by Tran that was a business organization, the form of which was unknown to Align at the time it filed the complaint. The amended judgment from which this appeal lies denotes that Tran & Associates is a fictitious business name under which Tran conducted business and that the judgment was "in favor of Bao Tran individually and dba Tran & Associates." Since there is no dispute that Tran & Associates is merely a fictitious business name, and thus there is no separate legal entity by that name (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348 [57 Cal.Rptr.2d 356]), for simplicity we will refer to Bao Tran, doing business as Tran & Associates, as Tran.

## PROCEDURAL BACKGROUND

### I. *Complaint*

On January 25, 2008, Align filed its complaint, alleging 11 causes of action against Tran.[3] Align alleged[4] that it hired Tran in March 2000; his position was "Corporate Counsel—Technology and Licensing." His duties consisted of managing Align's intellectual property (including patents), drafting and prosecuting applications for patents, managing Align's licensing arrangements, and assisting in general legal matters. Tran was later promoted to the position of "Associate General Counsel and Director of Legal Affairs."

Tran signed an Employee Proprietary Information and Inventions Agreement (Inventions Agreement) in which he promised loyalty to Align and assigned to Align any interest in any inventions, except to the extent such assignment would be prohibited under Labor Code section 2870. Tran was also required under the agreement to disclose any inventions conceived by him or reduced to practice prior to his employment with Align; Tran advised Align that he had " '[n]o inventions or improvements' " predating his Align employment. Tran also agreed in writing in September 2000 to abide by Align's rules, policies and standards, including those set forth in the company's employee handbook. Lastly, in June 2004, Tran signed a document under which he "agreed to abide by and comply with Align's Code of Business Conduct and Ethics." That document provided that employees (1) should avoid actual or apparent conflicts of interest; (2) were prohibited from engaging in conduct interfering with their job duties or that otherwise conflicted with Align; (3) were prohibited from simultaneous employment with any of Align's competitors, suppliers, customers, or developers; (4) were prohibited from conduct that would enhance or support the position of an Align competitor; and (5) were required to disclose any interests that might be in conflict with Align's interests.

Align placed Tran on administrative leave in January 2005 after it learned that he had used Align's confidential information to assist a startup competitor, OrthoClear, Inc. Align terminated Tran on February 3, 2005, and filed the prior suit against OrthoClear, Tran, and others at that time.

---

[3] The 11 causes of action alleged in the complaint consisted of claims for breach of contract, breach of loyalty (Lab. Code, §§ 2860–2863), fraud (intentional misrepresentation), fraud (concealment), replevin, detinue, conversion, unfair and unlawful business practices (Bus. & Prof. Code, § 17200 et seq.), declaratory relief, unjust enrichment, and imposition of a constructive trust.

[4] A demurrer admits all the truth of all facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Accordingly, we will refer to the allegations in the complaint in this paragraph and in the succeeding five paragraphs without sometimes using the prefatory "Align alleged," in order to avoid undue repetition of the phrase.

Align alleged in this action that Tran had committed acts during the course of his employment that were, inter alia, in breach of his contract with Align, a violation of his fiduciary duties and his duties of loyalty to the company, and a conversion of corporate property. In general, these actions consisted of Tran's (1) using company funds to apply to the United States Patent & Trademark Office (U.S.P.T.O.) for non-Align patents, including patents for Tran; (2) operating an unauthorized side business (Tran & Associates) in which he used Align's phone and computer systems to perform patent prosecution work for clients besides Align; and (3) misappropriating Align's property by applying for patents in his own name for inventions (i.e., methods of managing patent portfolios) that belonged to Align, in violation of his Inventions Agreement. While he was employed by Align, Tran failed to disclose to his employer that he was operating a side business or that he had inventions belonging to Align that he was claiming as his own.

Align learned of Tran's side business from telephone calls received from at least 13 of his clients, including one call in June 2005 from an individual who indicated that Tran had been his company's intellectual property and patent attorney for three years. Align also determined from a forensic search of Tran's company computer (performed on a date not alleged) that he had used that computer to operate his side business (e.g., to generate invoices, patent applications to the U.S.P.T.O., legal correspondence and memoranda, and client engagement letters).

In June 2006, Align performed an analysis of patent applications filed with the U.S.P.T.O., which disclosed that between 2004 and 2005, Tran filed 53 applications on behalf of his business and only six on behalf of Align. In one such patent application that Tran prosecuted for a client through Tran's separate business, he copied verbatim the language contained in an Align patent application. There were two particular patent applications filed by Tran in his own name in March 2004 and September 2004, respectively, that involved methods of managing a patent portfolio, which patent applications should have been assigned to Align.

## II.  *The Demurrer*

Tran filed a demurrer to the complaint. Tran specified that the demurrer was being brought under section 430.10, subdivision (e), i.e., that the complaint "does not state facts sufficient to constitute a cause of action." The grounds for the demurrer were, inter alia, that the entire action was barred under (1) the compulsory cross-complaint statute, (2) the doctrine of retraxit, and (3) the one-year statute of limitations applicable to actions against

attorneys (§ 340.6).[5] Tran included in the demurrer a request for judicial notice (§ 430.30, subd. (a); Evid. Code, § 452) of several pleadings from the prior suit, namely, Align's first amended complaint (the prior complaint), Tran's first amended cross-complaint against Align (hereafter, the Tran cross-complaint, or cross-complaint), and Align's answer to the Tran cross-complaint. Tran also asked the court to take judicial notice of the settlement agreement and mutual release (Settlement Agreement) entered into in October 2006 that settled, among other disputes, the prior suit.[6] That settlement resulted in the dismissal of the prior suit on October 18, 2006.

In his demurrer, Tran relied in part on the prior complaint. In the prior suit, Align sued OrthoClear, Muhammad Chishti (former chief executive officer and cofounder of Align, and founder of OrthoClear), Tran, and five other former Align employees (who later became employees of OrthoClear). As it concerned Tran, Align alleged in the prior complaint, inter alia, that (1) Align hired Tran in 2000; (2) by virtue of his employment, Tran "designed, implemented and managed virtually every aspect of Align's intellectual property protection program"; (3) Tran (and the other defendants) "engaged in a systematic effort to misappropriate [Align's] Confidential Information for the purpose of unfairly competing with Align . . ." in breach of Tran's employment agreement with Align and his duty of loyalty owed to Align; (4) during a meeting in San Francisco in December 2004 involving Chishti, Tran, and other defendants, "[i]n response to questions about how OrthoClear could sell a product similar to the Invisalign System without infringing Align's patents, Tran assured the group that he was confident that OrthoClear could circumvent Align's patents"[7]; and (5) Tran "made unauthorized charges to Align's account with the [U.S.P.T.O.]" Align asserted claims against Tran, inter alia, for unfair competition (in violation of Bus. & Prof. Code, § 17200 et seq.), trade secret misappropriation, breach of contract (the Inventions Agreement), conversion, and breach of loyalty (Lab. Code, §§ 2860–2863).

Tran also relied on his cross-complaint in the prior suit in support of his contention that Align's claims in this action were barred under section 426.30,

---

[5] The appellant's appendix did not include the notice that specified the grounds upon which Tran's demurrer was based. Because a demurring party must distinctly set forth the grounds upon which its objections to a pleading are based (§ 430.60), and because the notice of demurrer was thus essential to our review of this matter, on our own motion on September 25, 2009, we ordered the record augmented to include the notice of hearing on Tran's demurrer filed with the court below. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

[6] Align referred to the Settlement Agreement in its complaint herein. As such, it was an appropriate matter of which the court could take judicial notice. (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1285, fn. 3 [89 Cal.Rptr.2d 60]; *Salvaty v. Falcon Cable Television* (1985) 165 Cal.App.3d 798, 800, fn. 1 [212 Cal.Rptr. 31].)

[7] As alleged in the complaint in this action, the Invisalign System is Align's "core product . . . , a proprietary method for treating crooked and misaligned teeth."

subdivision (a). In that pleading, Tran alleged, inter alia, claims against Align for wrongful termination and for breach of contract. As to the latter claim, when Align terminated Tran, it also cancelled an agreement under which he had been granted options to purchase 40,600 shares of Align stock.

In support of his demurrer, Tran also cited the filing in the prior suit by Align (on May 30, 2006) of its answer to the cross-complaint. Included among the affirmative defenses in that answer were that Tran's claims were barred under the doctrines of unclean hands and estoppel (based upon Tran's "own acts or omissions"). Align did not file a cross-complaint in response to the Tran cross-complaint or otherwise assert any claims against Tran beyond those Align raised in its prior complaint.

Align filed extensive opposition to the demurrer, including a request for judicial notice of other pleadings from the prior suit and two federal lawsuits it had filed in June 2005 and June 2006, respectively, in which OrthoClear (but not Tran) had been named as a defendant. After oral argument and submission of the matter, the court issued a formal order sustaining Tran's demurrer without leave to amend, concluding that the action was barred under the compulsory cross-complaint statute.[8] The court concluded that "the claims now being asserted against defendant Bao Tran are related claims which plaintiff Align Technology, Inc. failed to assert in the underlying litigation." It did not specify its reasoning for denying Align leave to amend.

A judgment and an amended judgment on the order sustaining demurrer were entered in favor of Tran on May 22, 2008, and on June 24, 2008, respectively.[9] Align filed a timely notice of appeal. The matter is a proper subject for appellate review. (*Berri v. Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8]; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695 [40 Cal.Rptr.2d 125].)

---

[8] In the order sustaining demurrer, the court granted Tran's request for judicial notice as to the court pleadings from this action and from the prior suit (Evid. Code, § 452, subd. (d)), and as to the Settlement Agreement and the docket sheet from the prior suit (Evid. Code, § 452, subd. (h)). It granted Align's request for judicial notice in part as to pleadings from the prior suit (Evid. Code, § 452, subd. (d)); it denied the judicial notice request in part (as to press articles concerning the dispute between Align and OrthoClear and answers to interrogatories served in the prior suit). Align does not challenge the denial in part of its request for judicial notice.

[9] The court sustained without leave to amend the demurrer of Bao Tran. It overruled the demurrer as to "Tran & Associates." Because it was undisputed that Tran & Associates is not a separate entity (see fn. 2, *ante*), after the judgment was initially entered, by stipulation of the parties, the judgment was amended to reflect that it was "entered in favor of Bao Tran individually and dba Tran & Associates."

## DISCUSSION

### I. *Standard of Review*

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading stated facts sufficient to constitute a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075 [60 Cal.Rptr.2d 263, 929 P.2d 582].)

"It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660].) Thus, as noted, "the facts alleged in the pleading are deemed to be true, however improbable they may be. [Citation.]" (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824]; see also *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216] [court reviewing propriety of ruling on demurrer is not concerned with the "plaintiff's ability to prove . . . allegations, or the possible difficulty in making such proof"].)

On appeal, we will affirm a "trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736], fn. omitted.) Thus, "we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]" (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757 [62 Cal.Rptr.2d 778].)

An appellate court reviews the denial of leave to amend after the sustaining of a demurrer under an abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) When a demurrer is sustained without leave to amend, the reviewing court

must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. (*Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 719 [17 Cal.Rptr.3d 374].) The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

## II. *Compulsory Cross-complaints*

■ The compulsory cross-complaint statute is designed to prevent "piecemeal litigation." (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436 [39 Cal.Rptr.2d 791].) In discussing the legislative purpose of former section 439,[10] the predecessor of section 426.30, the Supreme Court explained that because "[t]he law abhors a multiplicity of actions . . . the obvious intent of the Legislature . . . was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. [Citation.] Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion. [Citation.]" (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393 [289 P.2d 214]; see also *Clark v. Lesher* (1956) 46 Cal.2d 874, 882 [299 P.2d 865].) In furtherance of this intent of avoiding a multiplicity of actions, numerous cases have held that the compulsory cross-complaint statute—both section 426.30 and its predecessor statute (former section 439)—must be liberally construed to effectuate its purpose. (See, e.g., *Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777 [186 Cal.Rptr. 543] (*Currie Medical*); *Ranchers Bank v. Pressman* (1971) 19 Cal.App.3d 612, 620 [97 Cal.Rptr. 78] (*Ranchers Bank*); *Sylvester v. Soulsburg* (1967) 252 Cal.App.2d 185, 190 [60 Cal.Rptr. 218]; *Carey v. Cusack* (1966) 245 Cal.App.2d 57, 66 [54 Cal.Rptr. 244]; *Saunders v. New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 334 [41 Cal.Rptr. 703] (*Saunders*).)

■ Section 426.30, subdivision (a), provides that "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not

---

[10] "If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor." (Former § 439, as amended by Stats. 1941, ch. 454, § 2, p. 1751, and repealed by Stats. 1971, ch. 244, § 42, p. 389.)

thereafter in any other action assert against the plaintiff the related cause of action not pleaded." As used in the compulsory cross-complaint statute, the term "complaint" includes both a complaint and cross-complaint (§ 426.10, subd. (a)), and the term "plaintiff" includes both a plaintiff and cross-complainant (§ 426.10, subd. (b)). And the phrase "related cause of action" in section 426.30 is defined as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c).) Because of the liberal construction given to the statute to accomplish its purpose of avoiding a multiplicity of actions, "transaction" is construed broadly; it is "not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated [citations]." (*Saunders, supra*, 231 Cal.App.2d at p. 336; see also *Currie Medical, supra*, 136 Cal.App.3d at p. 777.)

In addition, section 426.30 includes a timing element. The related cause of action must be one that was in existence at the time of service of the answer (§ 426.30, subd. (a)); otherwise, the failure to assert it in prior litigation is not a bar under the statute. (*Crocker Nat. Bank v. Emerald* (1990) 221 Cal.App.3d 852, 864 [270 Cal.Rptr. 699].)

■ Few California cases have interpreted the relatedness requirement of section 426.30. One case doing so—relied on by both Align and Tran—is *Currie Medical, supra*, 136 Cal.App.3d 774. The *Currie Medical* court, finding guidance in federal decisions construing the compulsory counterclaim statute, Federal Rules of Civil Procedure, rule 13(a) (28 U.S.C.) (hereafter, Rule 13(a)), held that the relatedness standard "requires 'not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them.' [Citation.] This logical relationship approach is the majority rule among the federal courts [citation]. At the heart of the approach is the question of duplication of time and effort; i.e., are any factual or legal issues relevant to both claims? [Citation.]" (*Currie Medical, supra*, at p. 777.)

### III.  *Order Sustaining Demurrer*

We apply the above principles to determine whether the court below properly sustained the demurrer because the claims alleged in Align's complaint were barred under the compulsory cross-complaint statute. This analysis (as noted above) includes a review of (1) whether the current claims are logically related to those asserted in the prior suit, and (2) if so, whether the current claims are nonetheless maintainable because they were not in existence at the time of Align's service of its answer to the Tran cross-complaint. We conclude that the demurrer was properly sustained because the claims as

alleged were barred under section 426.30, but that Align should have been granted leave to amend; we therefore need not address Tran's alternative argument that Align's claims were barred by principles of retraxit—a ground not mentioned in the court's order sustaining the demurrer. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [57 Cal.Rptr.3d 363] [courts will not address issues, the resolution of which is unnecessary to disposition of appeal].)[11]

### A. *Logical Relatedness*

#### 1. *Align's contentions*

Align contends that the two lawsuits are not logically related. It argues that the prior suit—which it describes as "corporate raid" litigation involving a startup competitor (OrthoClear) and various former key Align employees— was "separate and distinct from" the current litigation involving Tran's operation of "a side business law firm" and the misappropriation of Align's patents. (Hereafter, Align's claims in this action are sometimes generally referred to as the "side law business claim" and the "patent misappropriation claim," or collectively as the "current claims.") In support of this position, Align notes that it did not cite in its letter terminating Tran either his "undisclosed law firm side business," or nondisclosure of patents. Further, Tran in his cross-complaint did not allege that he was terminated for either of these reasons. And Align argues that the intellectual property involved in this case—patents wrongfully claimed by Tran that concerned the process of managing a patent portfolio—differs from that involved in the prior suit (i.e., "the technology Align uses to design, manufacture, and market clear align- ers"). It contends, moreover, that the injury in the prior suit (i.e., "theft of Align's core business practices, as well as its key employees") was very different from the injury claimed here (i.e., "patent portfolio management inventions that Tran failed to assign to Align and the loss of compensation paid Tran"). Accordingly, Align asserts that because the claims and alleged misconduct in the prior suit involved were not logically related to Tran's alleged misconduct in this action, the current claims are not barred under section 426.30.[12]

---

[11] Tran does not argue here that the court's ruling was correct on the third ground it urged below, i.e., that the claims are barred under the one-year statute of limitations provided in section 340.6. He accordingly has forfeited this argument. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [27 Cal.Rptr.3d 648, 110 P.3d 903] [appellate arguments "neither timely nor fully made" deemed forfeited].)

[12] Align also argued below that the current claims were not barred by the compulsory cross-complaint statute because Tran & Associates was not a party to the prior suit. Although it appeared from its opening brief that Align might be reasserting this argument here, it specifically abandoned the contention in its reply.

## 2. *Relatedness of Align's claims to Tran's cross-complaint*

We conclude that Align's position involves an improperly narrow application of the logical relatedness standard. As discussed below—based upon both case law construing California's compulsory cross-complaint statute and federal cases interpreting the analogous Rule 13(a)—we find that the claims alleged by Align in the complaint are logically related to the claims asserted in the Tran cross-complaint in the prior suit.

■ Align's side law business and patent misappropriation claims here, along with Tran's claims in the cross-complaint, arose out of the employment relationship between the parties. (See *Saunders, supra*, 231 Cal.App.2d at p. 338 [claims between parties arose out of same fiduciary relationship].) The claims here concerned alleged breaches of Tran's obligations to his employer, while those in the cross-complaint involved alleged breaches of Align's obligations to its employee. Further, some of the causes of action asserted by Align here—breach of contract, breach of loyalty, unfair competition, and conversion—were identical to those alleged by it against Tran in the prior complaint. And Align claimed in its complaint—as it did in the prior complaint—that Tran breached his obligations under the Inventions Agreement. (See *Currie Medical, supra*, 136 Cal.App.3d at p. 777 [rights and obligations under distributorship agreement relevant to competing claims between contracting parties]; see also 6 Wright et al., Federal Practice and Procedure (2d ed. 1990) § 1410, p. 68 [logical relationship test satisfied when one contract is basis for both claim and counterclaim].) The fact that the substantive breaches of duty and contract alleged by Align here differ from those asserted against Tran in the prior suit does not negate a finding of logical relatedness, particularly in view of the fact that Tran cross-complained against Align in the prior suit for alleged breaches of obligations arising out of the same employment relationship. In this regard, we find the reasoning of a case applying the federal compulsory counterclaim statute useful: "The word 'transaction' in Rule 13(a) cannot be read in such a restrictive sense as to limit compulsory counterclaims in actions for breach of contract to those addressed to the specific breach on which a plaintiff bases his claim for breach. The spirit and intent of Rule 13(a) requires that the entire contractual relationship be deemed to be included within the word 'transaction' in cases sounding in contract. [Citation.]" (*King Bros. Productions, Inc. v. RKO Teleradio Pictures, Inc.* (S.D.N.Y. 1962) 208 F.Supp. 271, 275.)

Moreover, the matters Align asserted here are those that one would anticipate an employer might raise—either as defenses, by cross-complaint, or both—in responding to an employee's claim for wrongful termination such as the one raised in the Tran cross-complaint. (See, e.g., *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970 [272 Cal.Rptr. 126] [employer responded to employee suit for wrongful discharge with cross-complaint for

conversion].) The alleged misconduct here—operating a side law business and misappropriating Align's patents—if proved, could have been offered in support of Align's unclean hands affirmative defense pleaded in its answer to the Tran cross-complaint. (See *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638–639 [41 Cal.Rptr.2d 329] (*Camp*) [in response to wrongful termination suit, employer pleaded unclean hands defense, based upon false representations by employees that they had no prior felony convictions].) It might also have been relevant to the defense of estoppel that Align asserted in its answer. And that alleged misconduct may have also been offered as a complete or partial defense by Align in respond-ing to the Tran cross-complaint under the after-acquired-evidence doctrine. (See *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 842 [77 Cal.Rptr.2d 12].)[13] That "doctrine shields an employer from liability or limits available relief where, after a termination, the employer learns for the first time about employee wrongdoing that would have led to the discharge in any event." (*Camp*, at p. 632; see generally *McKennon v. Nashville Banner Publishing Co.* (1995) 513 U.S. 352 [130 L.Ed.2d 852, 115 S.Ct. 879].)

Several cases applying California's compulsory cross-complaint statute— both section 426.30 and former section 439[14]—are illustrative. In *Saunders, supra,* 231 Cal.App.2d at page 327, Saunders, a corporate director and general counsel, brought suit for quantum meruit for services rendered in assisting the corporation in (1) obtaining working capital, and (2) making a loan. The company argued that the claims were barred because it had previously sued Saunders to recover $14,000 taken by him through the issuance of unauthorized checks, and Saunders had responded (without cross-complaining) that he was entitled to the funds because of his work in raising working capital for the company. (*Ibid.*) The court held that Saunders's claims were barred under former section 439, even though the issue of his right to compensation for assisting the company in making a loan had not been directly at issue in the first case; it concluded that the claims in both actions "flowed from the fiduciary relationship existing between [Saunders

[13] Align asserts in its reply brief that there is no basis for Tran's claim that Align was *required* under the after-acquired-evidence doctrine to have pleaded as a total or partial defense to the Tran cross-complaint the alleged misconduct of Tran described in the complaint. We refer to the potential applicability here of the after-acquired-evidence doctrine only as an identification of one of a number of factors that inform our holding that the claims as pleaded in the complaint are barred by the compulsory cross-complaint statute.

[14] We of course acknowledge that section 426.30's predecessor, former section 439, referred to omitted "counterclaims," not cross-complaints. (See fn. 10, *ante.*) In legislation enacted in 1971, the counterclaim was abolished. (See § 428.80: "Any cause of action that formerly was asserted by a counterclaim shall be asserted by a cross-complaint.") However, the "theory [of the compulsory counterclaim statute, former section 439] is the basis of the present compul-sory cross-complaint rule . . . ." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1177, p. 607.) For the sake of simplicity here therefore, we refer to former section 439 as the predecessor to the compulsory cross-complaint statute.

and the company]." (231 Cal.App.2d at p. 338.) In reasoning that has application to the case before us—although there the compulsory cross-complaint statute was being asserted against the individual, rather than the company—the court observed, "It is obvious that when the prior action was commenced . . . , Saunders' connection with the corporation had been severed. The action called into question his conduct and sought relief because of alleged breaches of his fiduciary obligations. It is also obvious . . . that . . . Saunders . . . was being called upon, as it were, to give an account of his stewardship. He was being charged with malfeasance. If there were any items on the other side of the account for which he was entitled to credit, the situation required that he present them. Indeed he seems to have fully realized that he should make claim for compensation for the first group of services pertaining to the working capital. He should not be permitted to withhold his claim for compensation for the services pertaining to the Associated loan. He had reasonable notice from the complaint that the time had come for the settling of his accounts." (*Ibid.*)

In *Currie Medical, supra,* 136 Cal.App.3d at page 776, the plaintiff (Currie) and its competitor, the defendant (Bowen), sold labels to hospitals; the parties orally agreed that Currie would cease selling labels and would become a distributor for Bowen. Bowen had sued Currie in federal court for unfair competition and violations of the Lanham Act (15 U.S.C. § 1051 et seq.), claiming that Currie procured Bowen's customer lists and style of labels during the time of the distribution arrangement and after its termination unfairly competed with Bowen. (*Currie Medical,* at p. 776.) After Currie answered, the first case was dismissed with prejudice based upon the parties' stipulation. (*Ibid.*) Currie later sued Bowen in state court for breach of the distributorship contract and alleged that Bowen had committed fraud at the inception of the agreement. (*Ibid.*) The court affirmed the trial court's granting of Bowen's summary judgment motion on the basis that Currie's claims were barred under the compulsory cross-complaint statute. (*Ibid.*)

Applying the "logical relation approach" adopted from federal case law, the court held that "[t]he claims of Bowen and Currie involve common issues of law and fact. The nature of the contractual relationship is central to Currie's claim; it is likewise relevant to Bowen's claim because of the allegation Currie usurped Bowen's business properties during the relation-ship. Currie's answer to Bowen's complaint in federal court argued for estoppel based on Bowen's previous actions; those actions were the same as those which are the basis of Currie's current complaint. This overlap of issues satisfies the logical relation approach to the transaction or occurrence test." (*Currie Medical, supra,* 136 Cal.App.3d at p. 777.) Moreover, the court rejected Currie's contention that the logical relation standard should not apply to bar its claim under section 426.30 because to do so would work an injustice: "Currie contends the logical relation test is improperly broad when

it is used to bar a claim; the policy in favor of giving each person a day in court is stressed. The case law does not support Currie. The waiver provision of section 426.30 is mandatory, the policy in favor of hearing all related claims in a single action controlling [citations]. The 1979 federal action was the proper time and place for Currie's claim." (*Currie Medical*, at p. 777; see also *Ranchers Bank, supra*, 19 Cal.App.3d 612 [seller of auto dealership's action against buyer under promissory note barred because it should have been brought in prior suit where buyer, after being sued by lender, cross-complained against lender and seller for fraud and rescission].)

Our conclusion that Align's claims are logically related to Tran's cross-complaint is also supported by cases applying Rule 13(a), governing compulsory counterclaims.[15] In language similar to that found in section 426.30, Rule 13(a) provides in part: "(1) *In General.* A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: [¶] (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and [¶] (B) does not require adding another party over whom the court cannot acquire jurisdiction." "A counterclaim which is compulsory but is not brought is thereafter barred [citation]." (*Baker v. Gold Seal Liquors* (1974) 417 U.S. 467, 469, fn. 1 [41 L.Ed.2d 243, 94 S.Ct. 2504].) Like California's compulsory cross-complaint statute, the compulsory counterclaim requirement of Rule 13(a) "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." (*Southern Const. Co. v. Pickard* (1962) 371 U.S. 57, 60 [9 L.Ed.2d 31, 83 S.Ct. 108].)

Although other tests have been used in some instances,[16] the "logical relationship" inquiry is the preferred approach in ascertaining whether a claim arises out of the same transaction or occurrence so that it constitutes a compulsory counterclaim under Rule 13(a). (See, e.g., *Transamerica Occidental Life Ins. Co. v. Aviation Office of America* (3d Cir. 2002) 292 F.3d 384, 389; *Burlington Northern R. Co. v. Strong* (7th Cir. 1990) 907 F.2d 707, 711; *Computer Associates Internat., Inc. v. Altai, Inc.* (2d Cir. 1990) 893 F.2d 26, 29; *Pochiro v. Prudential Ins. Co. of America* (9th Cir. 1987) 827 F.2d 1246, 1249 (*Pochiro*).) As such, it provides an interpretation that is parallel to

---

[15] "A counterclaim is any claim for relief, other than an original claim, that one party has against an opposing party." (1 Moore's Manual: Federal Practice and Procedure (2009) § 11.60[1], p. 11-51, fn. omitted.)

[16] A leading authority has explained that three other tests besides the preferred logical relationship test have been utilized by some federal courts, namely, whether (1) the factual and legal issues of the claim and counterclaim are largely the same, (2) a later suit on the defendant's claim would be subject to a res judicata bar, and (3) substantially the same evidence would be involved in presenting and refuting both the claim and counterclaim. (6 Wright et al., Federal Practice and Procedure, *supra*, § 1410, pp. 52–55; see also Friedenthal et al., Civil Procedure (2d ed. 1993) § 6.7, pp. 351–352.)

that used in California to define "transaction" under the compulsory cross-complaint statute. (See *Saunders, supra,* 231 Cal.App.2d at pp. 336–337 & fn. 6.) This standard dates back to at least 1926, when the Supreme Court observed that the term "transaction," in the context of compulsory counter-claims, "is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." (*Moore v. N. Y. Cotton Exchange* (1926) 270 U.S. 593, 610 [70 L.Ed. 750, 46 S.Ct. 367].)

Several federal cases involving compulsory counterclaims in the context of employment disputes are useful in our consideration of the case before us. In *Klein v. London Star Ltd.* (S.D.N.Y. 1998) 26 F.Supp.2d 689, 697, Klein brought federal and state age discrimination claims against his former employer, and the company brought a counterclaim for trade secret misappropriation. The court rejected Klein's motion to dismiss based on the contention that the counterclaim was permissive and that therefore there was no independent federal jurisdictional basis for it. Applying the logical relationship test, the court concluded that the counterclaim was compulsory and not subject to dismissal: "Klein claims that he was constructively discharged because of alleged age discrimination. [The d]efendants' answer provides an alternative basis for why Klein left Star Group's employ—i.e., that Klein left because he knew he would be discharged for his theft of Star Group's trade secrets. The counterclaim against Klein is based on the same transaction and occurrence that is the subject matter of this action as it arises out of Klein's employment with [the d]efendants and the constructive discharge from his employment." (*Ibid.*)

Likewise, in *Automated Datatron, Inc. v. Woodcock* (D.D.C. 1979) 84 F.R.D. 408, 411, the plaintiff sued its former employee (Woodcock) for diversion of its customers and use of company assets for Woodcock's own business, and Woodcock counterclaimed for money owed under a stock agreement. The court denied the plaintiff's motion to dismiss the counter-claim, concluding that the counterclaim was compulsory. It determined that there was a logical relationship between the claim and counterclaim because "[t]he focal point of [the] plaintiff's claim is thus the employment relationship of ADI and [the] defendant Woodcock and the extent to which the defendant allegedly abused or violated that association. Likewise, the essential facts of the amended counterclaim involve the same employer-employee relationship as it pertains to the alleged stock agreement . . . , under which [Woodcock] was to perform as vice-president of the corporation, acting solely in its interests, in exchange for an assignment of twenty percent of the outstanding stock of the corporation. The question of the propriety or impropriety of defendant Woodcock's actions as a corporate employee is so intertwined with the claims at issue in both [the] plaintiff's and [the]

defendant's actions that 'common sense and judicial economy compel the conclusion that such claims should be tried together . . . .' [Citation.]" (*Id.* at p. 413.)

In *Pochiro, supra,* 827 F.2d at page 1248, a company sued its former employee, Pochiro, for misappropriation of trade secrets (i.e., customer information), and Pochiro later brought suit separately against the company, claiming that it had defamed him and had otherwise attempted to undermine his new competing business. The court, applying the " 'flexible approach' " of the logical relationship test (*id.* at p. 1249), held that Pochiro's suit was a compulsory counterclaim. It reasoned, inter alia, that Pochiro's use of customer information was "inextricably intertwined" with the facts underlying his claims against the company (*id.* at p. 1250), and a "liberal reading" of the standard dictated the conclusion that Pochiro's suit constituted a compulsory counterclaim. (*Id.* at p. 1252; see also *General Cable Corp. v. Highlander* (S.D.Ohio 2006) 447 F.Supp.2d 879 [employee's counterclaim for wrongful termination in response to employer's claim for breach of fiduciary duty in awarding company contracts favorable to her held compulsory]; *Zuckert v. Berkliff Corp.* (N.D.Ill. 1982) 96 F.R.D. 161 [principal's breaches of contract and fiduciary duty counterclaims against agent, alleging agent solicited customers to buy products from competitors and violated principal's nonsolicitation policy, held compulsory to agent's claim for breach of contract to pay commissions and incentive bonuses].)

In *Currie Medical, supra,* 136 Cal.App.3d 774, *Ranchers Bank, supra,* 19 Cal.App.3d 612, and *Saunders, supra,* 231 Cal.App.2d 324, the courts concluded that, because the unasserted claims arose out of the same relationship between the parties that had given rise to the original claims, there was a sufficient relatedness between them to trigger the compulsory cross-complaint statute. Likewise, in the federal employment cases above, the courts gave broad construction to the compulsory counterclaim provisions of Rule 13(a) in finding that there was a logical relatedness between the claims of the employer and employee. We conclude therefore, under the circumstances presented here, that the claims alleged by Align here were logically related to the Tran cross-complaint, and (if in existence at the time Align answered the cross-complaint) should have been raised in the prior suit. In so holding, we reject Align's argument that its "corporate raid" claims in the prior suit were so qualitatively different from its side law business and patent misappropriation claims as to preclude a finding that its claims are logically related to the claims asserted in the Tran cross-complaint. To conclude otherwise would be to (1) disregard the liberal construction given to the application of the compulsory cross-complaint statute; (2) ignore the fact that the current claims of Align against Tran and the claims alleged in the Tran cross-complaint all arose out of the same employment relationship; (3) discount the commonality

of the current claims and those asserted in the prior complaint; and (4) encourage claim-splitting and foster multiplicative litigation that the statute was intended to prevent.

## B. *Timing of Accrual of Claims*

We have found that the side law business and patent misappropriation claims bore a logical relationship to the claims asserted in the Tran cross-complaint. We next address whether the temporal element for the assertion of a compulsory cross-complaint—i.e., whether Align's claims alleged here were in existence at the time it responded to the Tran cross-complaint—was also satisfied.

Align contends that even if the claims alleged in the complaint are deemed to be related to the claims in the Tran cross-complaint, they were unknown to it at the time it answered the cross-complaint in the prior suit (on May 30, 2006) and hence, are not barred. Align points to the fact that, as alleged in the complaint, it did not become aware that Tran, while employed by Align, had filed applications for numerous patents for non-Align clients and for himself personally until it commenced an investigation in June 2006.

Tran responds that Align's assertion that it did not discover the patent misappropriation claim until June 2006 is belied by its own allegations elsewhere in the complaint to the effect that it had learned in June 2005 that Tran had been operating a side law business while he was employed by Align. He contends that Align therefore cannot be permitted to plead a one-year ignorance of the patent misappropriation claim in order to defeat the compulsory cross-complaint statute.

We conclude that the complaint was demurrable because, on its face, the actionable conduct alleged against Tran was subject to the compulsory cross-complaint statute. As we have already observed, the current claims, if existing at the time Align answered the cross-complaint, were qualitatively ones that were compulsory and should have been raised in the prior suit. However, it cannot be determined conclusively—from the mixture and ambiguity of allegations in the complaint relating to the timing of Align's knowledge of its claims—whether *each* of these claims was in existence as of May 30, 2006. Tran makes a persuasive argument that, based on the allegations appearing in the complaint, the side law business claim is barred by the compulsory cross-complaint statute because it was in existence as of May 30, 2006. Align alleged that it had received one telephone call in June 2005 from a person who stated that Tran had been his company's intellectual property and patent attorney for three years. Align also alleged that it had "received [on dates not alleged] at least one dozen other, similar phone calls

from Tran's other clients." It also alleged that its forensic search of Tran's company computer—performed on a date also not alleged—disclosed that Tran had used that computer to operate his side law business. Therefore, unless Align can plead—these previously pleaded facts notwithstanding—that its side law business claim had not accrued prior to May 30, 2006, it cannot state a viable claim on this basis.

Likewise, Tran's contention that, based upon the allegations of the complaint, Align's patent misappropriation claim accrued by May 30, 2006, appears to have merit. Align alleged that Tran misappropriated its "property by applying for patents in his own name for various methods of managing a patent portfolio, the precise job Align was paying him to do on Align's behalf . . . ." The complaint alleged further that two examples of such patent applications were ones submitted to the U.S.P.T.O. in Tran's own name in March and September 2004. Further, Align alleged that it had become aware by June 2005 that Tran, as a patent attorney, had represented a number of clients while he was employed by Align, and it had learned from a forensic search of his company computer—at some unspecified date after Tran's termination—that Tran had used Align resources to prepare patent applications for non-Align clients. But Align also alleged in the complaint that it was not until June 2006 that it "analyzed the patents filed with the [U.S.P.T.O.] that list[ed] Tran and/or Tran & Associates as an attorney or agent." It then went on to state on information and belief that Tran had filed 53 patent applications in 2004 and 2005 on behalf of his side business and only six applications on behalf of Align. The complaint, however, did not state clearly the date upon which Align became aware of, or reasonably should have learned about, these patent filings. (Cf. Civ. Code, § 3426.6 [trade secret misappropriation claim accrues, for purposes of statute of limitations, when owner discovers or reasonably should have discovered the misappropriation].) The patent misappropriation claim would have been a compulsory cross-complaint if it had been in existence as of May 30, 2006. It appeared from the allegations of the complaint that the claim did exist at that time—notwithstanding other allegations that suggested that Align may have learned of additional details concerning the claim after May 30, 2006. Accordingly, the demurrer as to the patent misappropriation claim was also properly sustained.

Tran argues that even if Align did not become aware of the separate patent filings until June 2006, its obligation to assert the patent misappropriation claim in the prior suit continued *after* it answered the cross-complaint up to the settlement of that case in October 2006. In support of this position, he cites *AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310 [89 Cal.Rptr.2d 918] (*AL Holding*).

**(6)** In *AL Holding*, the assignee of a developer brought suit on an open book account against a consultant, the defendant. (*AL Holding, supra,* 75 Cal.App.4th at p. 1312.) The defendant successfully asserted by demurrer that the claim was barred under section 426.30, because it had brought a prior action against (among others) the plaintiff's assignor, the assignor answered without cross-complaining, and that prior action was subsequently settled. (75 Cal.App.4th at p. 1312.) In affirming the judgment, the court held that the plaintiff's assigned claim—which the plaintiff admitted was transactionally related to the prior action (*id.* at p. 1313)—was barred by the compulsory cross-complaint statute. (*Id.* at p. 1314.) In language relied on by Tran here, the court observed, "The critical time period to which section 426.30 looks is that point in time when the complaint has been filed and served against a defendant and the defendant *'fails* to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he *has* against the plaintiff.' . . . In this case the judicially noticed documents demonstrated that [the assignor's] answer to the first amended complaint was dated March 30, 1995. Neither then nor at any point up to the settlement conference statement dated June 27, 1996, had [the assignor] either filed or sought leave to file a cross-complaint on its open book account claim. [Citation.] Accordingly that claim was barred when AL Holding attempted to assert it in 1997." (*Id.* at pp. 1313–1314.)

*AL Holding* does not require that we conclude here that the compulsory cross-complaint statute bars the patent misappropriation claim because of Align's failure to assert it in the prior suit between the time it answered the cross-complaint and the settlement of the case in October 2006. The compulsory cross-complaint statute plainly provides that the relevant date is "the time of serving [defendant's] answer to the complaint . . . ." (§ 426.30, subd. (a); see also Legis. Com. com., 14B West's Ann. Code Civ. Proc. 2004 ed.) foll. § 426.30, p. 476 ["Only related causes of action that exist at the time of service of the answer to the complaint on the particular plaintiff are affected by Section 426.30"].) Our high court has made it clear that under section 426.30, related claims that accrue in favor of a defendant against the plaintiff *after* it answers the complaint may be, but are not required to be, asserted in the original action. (*E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 505–506 [146 Cal.Rptr. 614, 579 P.2d 505].) Accordingly, we decline Tran's suggestion that we apply dictum in *AL Holding* to reach a conclusion here that would contradict both the plain wording of the statute and the clear holding of the Supreme Court.

■ Based upon our conclusions that (1) Align's claims are logically related to the Tran cross-complaint and (2) the allegations of the complaint do not clearly show that any of the claims arose after Align answered the cross-complaint, we agree that the court properly sustained the demurrer.

## IV.  *Denial of Leave to Amend*

In Align's opposition to the demurrer, it noted that, even were the court to agree with Tran's position that the complaint failed to state a cause of action, it should grant Align leave to amend "to provide additional allegations as to when it discovered the misconduct at issue." This argument notwithstanding, the court sustained Tran's demurrer without leave to amend. This was error.

■ In ruling on a demurrer, the court must grant the plaintiff leave to amend if "there is a reasonable possibility that the defect can be cured by amendment . . . ." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39 [77 Cal.Rptr.2d 709, 960 P.2d 513].) The failure of the court to grant leave under such circumstances is ordinarily an abuse of discretion. (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at pp. 970–971.) Furthermore, "[i]f the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment. [Citations.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 [68 Cal.Rptr.3d 295, 171 P.3d 20]; see also *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227 [44 Cal.Rptr.2d 197] ["Liberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given."].) As noted above, the plaintiff bears the burden of showing "in what manner [it] can amend [its] complaint and how that amendment will change the legal effect of [its] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) The plaintiff may make this showing in the first instance on appeal. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].)

Align argues that it "could have amended its complaint to further clarify that the claims at issue arose after Align filed its answer to [the Tran cross-complaint]." It contends that in an amended complaint, it could have provided a clearer explanation of the timing of the discovery of the patent misappropriation claim. In addition, Align points to the fact that during oral argument below, its counsel noted that some of the patents that were relevant to its claims had not even been filed by Tran until after Align filed its answer to the cross-complaint in the prior suit. This was a fact not raised in the complaint itself. Accordingly, Align argues, it should have been given leave to amend to plead the fact that some of the patents involved in its claim against Tran were not even filed by Tran with the U.S.P.T.O. until after Align answered the Tran cross-complaint.

We conclude that Align—based upon matters it raised below and on its showing to this court in support of its position that it may be able to present a

viable claim—met its burden of showing that there was a reasonable possibility it could have cured the complaint's defects through an amendment. Because it is reasonably possible that Align could amend the complaint to allege a claim against Tran that would not be barred by the compulsory cross-complaint statute, we hold that it should have been granted leave to amend. Accordingly, we find that the court abused its discretion here in denying Align leave to amend.

## DISPOSITION

The judgment is reversed. The case is remanded with instructions that the court enter an order sustaining the demurrer to Align's complaint with leave to amend.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.