Filed 4/17/13  Olson v. Rafidi CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JULIANNA L. OLSON, | B241454 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC095276) |
| v. | |
| FAUD RAFIDI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Jr., Judge.  Affirmed.

Law Offices of Rheuben & Gresen, Steven V. Rheuban and Steven M. Cischke, for Plaintiff and Appellant.

La Follette, Johnson, De Haas, Fesler & Ames, Christopher P. Wend and David J. Ozeran, for Defendants and Respondents.

_____

The trial court dismissed without leave to amend Juliana Olson's first amended complaint alleging medical malpractice, sustaining a demurrer on the ground that that the action was barred by the statute of limitations. Olson appeals, and we affirm.

## BACKGROUND

On October 26, 2011, Olson filed a complaint for professional negligence against Faud Rafidi, M.D., the San Fernando Valley Vascular Group, and others (hereinafter Dr. Rafidi). Olson alleged that Dr. Rafidi had negligently performed her thyroid lobectomy procedure on April 22, 2009. Attached was a notice of intent to commence legal action dated July 7, 2011. Dr. Rafidi filed a demurrer stating that the action was barred by the one-year statute of limitations, and the court sustained the demurrer with leave to amend on January 11, 2012.

On January 20, 2012, Olson filed a first amended complaint alleging that after her thyroid lobectomy surgery on April 22, 2009, she "suffered breathing problems, but thought it was due to asthma. When Plaintiff went to Defendant[] Dr. Rafidi . . . for follow ups she complained of her breathing problems, but was told by Dr. Rafidi that her breathing problems were not caused by the surgery, and that it must be caused by stress in her personal life. On or about July 7, 2009 Plaintiff saw her asthma doctor who said her problems could be caused by a vocal cord. Plaintiff followed up with an ENT [ear, nose and throat] specialist who told her that when a vocal cord gets stretched, it could take up to two years to recover as long as it is not severed. He told Plaintiff her vocal cord was not severed. Two years later, on or about May 25, 2011, Plaintiff went for a two year checkup, and was told that there was no change in her vocal cord and that, if it had not healed by then, it probably never would." Dr. Rafidi was negligent in his treatment of Olson, causing her damages.

Again, Dr. Rafidi filed a demurrer stating that the action was barred by the one-year statute of limitations in Code of Civil Procedure section 340.5. After a hearing on March 14, 2012, the trial court granted the demurrer without leave to amend in an order filed March 26, 2012. Olson filed this timely appeal.

2

## DISCUSSION

We review de novo the trial court's sustaining of the demurrer. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "The application of the statute of limitations on undisputed facts is a purely legal question," which we also review de novo. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) "We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [plaintiff's] claim is barred as a matter of law." (*Ibid.*)

When the trial court has sustained a demurrer without leave to amend, we "decide whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) It is Olson's burden to show that she could have amended the complaint to cure the defect. (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 959.)

The statute of limitations for an action based on medical malpractice must be filed "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) We agree with the trial court that the facts pleaded in the first amended complaint show that Olson discovered her injury as early as July 7, 2009, when her asthma doctor told Olson her breathing problems could be caused by a vocal cord. She failed to file her complaint within one year after that discovery, and the sustaining of the demurrer was proper.

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ""'has notice or information of circumstances to put a reasonable person *on inquiry*. . . .'"" [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear

3

that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110–1111, fn. omitted.) "In sum, the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged." (*Id.* at p. 1114.)

The statute of limitations began to run on July 7, 2009, when the asthma doctor told Olsen that her injury (her breathing problems) could be caused by a vocal cord. At that point, Olson suspected, or should have suspected, that her injury was caused by the surgery performed by Dr. Rafidi, because those circumstances would put a reasonable person on inquiry notice. Olson was also put on notice of the falsity of Dr. Rafidi's earlier representations that her breathing problems were the result of stress. The complaint gives no date for her subsequent consultation with an ear, nose, and throat doctor, who told her that her vocal cord was not severed, and a stretched cord could take up to two years to heal. Olson already knew she had an incentive to sue, and decided to sit on her rights rather than to file suit. The one-year statute of limitations expired on July 7, 2010.

Olson argues that the statute did not begin to run until she went for a two-year checkup (the complaint does not specify with whom) on May 25, 2011, and was told that there was no change in her vocal cord, which probably would not heal. She characterizes this as learning that the vocal cord was severed, rather than stretched. But the complaint states merely "there was no change in her vocal cord and that, if it had not healed by then, it probably never would." Olson had been told previously that the cord was not severed, so "no change" would more likely mean that the cord was stretched and did not heal. Even if she learned on May 25, 2011 that her vocal cord had been severed, however, this would not change our analysis. Once Olson learned that her vocal cord could be the source of her breathing problem and connected it with the surgery performed by Dr. Rafidi, she did not need to know the specific facts—how badly the cord had been stretched, or whether it had been severed—for the limitations period to begin. We also note that there is nothing in the complaint to support Olson's contention on appeal that

4

only the severing, not the stretching, of her vocal cord would be the result of negligence during surgery.

Olson suspected wrongdoing on July 7, 2009, when she was first aware that her vocal cord was the cause of her breathing problem, a suspicion that led her to consult a specialist, who confirmed that her vocal cord had been affected. She had an incentive to sue as of that date and could not wait until all the facts were known. Olson chose to sit on her rights instead of filing suit during the one-year limitations period, and the trial court was correct in sustaining the demurrer to her first amended complaint.

We also conclude that the trial court did not abuse its discretion in denying leave to amend. Olson did not carry her burden to show a reasonable possibility that she could amend her complaint a second time to cure the defect. At the hearing on the demurrer, counsel for Olson stated: "We can allege that the plaintiff's nerve was improving, but her breathing problems remained the same. But her voice was improving. So in that respect, she was showing improvement during those two years." The first amended complaint, however, says nothing about Olson's voice, and so whether her voice was improving has no effect on the running of the limitations period. Olson's counsel also represented: "We can also allege that it was Dr. Rafidi who told her E.N.T. specialist that the nerve had not been severed. . . . She did rely on Dr. Rafidi that, you know, nothing had been severed and it could take two years to heal." Whether Dr. Rafidi spoke to the specialist regarding whether the cord had been severed is irrelevant, however, because as we explained above, Olson has made no allegation that only the severing of her vocal cord would support a claim of malpractice.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:

MALLANO, P. J.


CHANEY, J.