Filed 9/26/16  Dagodag v. Dagodag CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MELISSA DAGODAG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CHRISTINE DAGODAG et al.,<br><br>    Defendants and Respondents. | B264192<br><br>(Los Angeles County<br>Super. Ct. No. SC122503) |
| FREDERICK A. PEASLEY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CHRISTINE DAGODAG et al.,<br><br>    Defendants and Respondents. | B264667<br><br>(Los Angeles County<br>Super. Ct. No. SC122042) |

APPEAL from orders and judgments of the Superior Court of Los Angeles County, Lawrence H. Cho, Judge.  Reversed with directions.

The Boesch Law Group, Philip W. Boesch, Jr., and Annie Ksadzhikyan for Plaintiff and Appellant Melissa Dagodag.

Rick Peasley, in pro. per., for Plaintiff and Appellant.

Joseph A. Hearst for Defendants and Respondents.

_____

This dispute among the children Frederick Peasley (Rick) and Christine Dagodag (Christine) and grandchildren Melissa Dagodag (Melissa) and Trista Bernato (Trista) of the deceased Betty Peasley (Betty)[1] concerning the distribution of her estate is before us for the second time.

In the prior appeal, we affirmed the probate court's denial in part of Rick and Melissa's (collectively, Appellants) anti-SLAPP motion to dismiss all claims in Christine and Trista's (collectively, Respondents) November 15, 2013 complaint (LP017194). (*Bernato v. Peasley* (Mar. 22, 2016, B256486) [nonpub. opn.].)  Respondents' complaint alleged causes of action for financial elder abuse, constructive fraud based on breach of fiduciary duty, undue influence or coercion, conversion, and quiet title—all stemming from Appellants' allegedly improper actions in procuring estate-planning documents from Betty.  Among other relief, the complaint sought a declaration that Appellants have forfeited any inheritance from Betty and a constructive trust placed upon the assets in Betty's estate.

The two current consolidated appeals concern separate complaints:  a complaint filed by Rick on February 7, 2014 which initiated a separate action in the superior court (SC122042, initially assigned to Judge Richard A. Stone); and a complaint filed by Melissa on May 5, 2014 which also initiated a separate action in the superior court (SC122503, initially assigned to Judge Lisa Hart Cole).  Mirroring Respondents' 2013 complaint, Rick and Melissa's 2014 complaints allege causes of action including elder abuse, breach of fiduciary duty and conversion—and assert that Respondents attempted to prevent Betty from changing her estate plan in favor of Appellants.  Among other relief, the complaints seek a declaration that Respondents cannot receive an inheritance from Betty and/or a constructive trust placed upon the assets in Betty's estate.

_____

[1] We refer to all the parties and deceased by their first names for the sake of clarity, intending no disrespect.

2

Appellants appeal from the judgments of dismissal with prejudice that followed orders (by Judge Lawrence H. Cho) that sustained, without leave to amend, Respondents' demurrers to Appellants' complaints based on the compulsory cross-complaint statute. The compulsory cross-complaint rule requires parties to litigate all conflicting claims between them that arise out of the same transaction or occurrence, or series of transactions or occurrences, in a single action or proceeding. Although we agree with the superior court that the claims in Appellants' 2014 complaints are sufficiently related to the claims in Respondents' 2013 complaint to bring them within the compulsory cross-complaint rule, we conclude that an order designating the two underlying cases as related to the pending probate proceeding, rather than dismissal of the complaints, is the appropriate outcome based on the unique facts here. We leave to the probate court to determine in the first instance whether consolidation of the cases is appropriate.

## BACKGROUND

### I.     Facts of the case

In *Bernato v. Peasley*, *supra*, B256486, we provided a detailed recitation of the parties' conflicting factual allegations which concern the events before Betty's death related to her estate planning.

Here, it is sufficient to note as follows: (1) in 1998, Betty executed a will and trust that directed the manner of distribution of the assets of her estate and she later amended the trust in 2001 and 2003 (2003 Trust) and (2) in 2009, Betty executed a handwritten trust revocation that revoked the 2003 Trust and she also executed a handwritten will (2009 Will). The parties dispute the validity of the competing 2003 Trust and 2009 Will: Respondents are proponents of the 2003 Trust; Appellants are proponents of the 2009 Will.

### A.     The first complaint (LP017194)

After Betty's death in February 2013, Respondents began administering the 2003 Trust; however, on March 4, 2013, Rick filed in the probate court a petition for probate of the 2009 Will. In September 2013, Respondents filed a motion to revoke the probate of the 2009 Will and for "transfer of assets to trustee," a petition for an order to confirm the

3

validity of the 2003 Trust "and confirm assets to revocable trust," and a "contest and grounds of objection to probate of purported will."

On November 15, 2013, in the same probate proceeding, Respondents filed a complaint against Appellants and Anne Peasley (Rick's wife) which alleged causes of action for, inter alia, financial elder abuse, breach of fiduciary duty and conversion (Respondents' 2013 complaint). By way of relief, they sought, inter alia, damages, a determination of invalidity of the 2009 Will, a declaration that Appellants "have forfeited any interest under the Estate of Betty E. Peasley and any valid estate plan of Betty E. Peasley," a declaration that "the true owner of the said property is the [2003 Trust]" and "the persons lawfully entitled to distribution thereof including [Respondents]," and the imposition of a constructive trust over the assets in Betty's estate.

In response, Rick filed an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16 but did not file a cross-complaint. According to Respondents' representation on appeal, Melissa filed a "'joinder' in Rick's anti-SLAPP motion"; although Respondents did not include a citation to the record in support of that contention, Appellants' reply brief did not dispute that joinder or that Melissa also failed to file a cross-complaint.

Judge David S. Cunningham, III granted the anti-SLAPP motion only as to claim 5 for conversion; Rick appealed the trial court's denial as to the remaining claims 1 to 4 and 6 to 8; Respondents did not file a cross-appeal; and we affirmed the trial court's ruling. (*Bernato v. Peasley*, *supra*, B256486.)

**B.     The second complaint (SC122042, initially assigned to Judge Richard A. Stone)**

On February 7, 2014, Rick filed a civil complaint against Respondents on theories of elder abuse, breach of fiduciary duty and conversion. The complaint sought various relief including damages, the imposition of a constructive trust over "the monies and property wrongfully taken from Decedent [Betty]" by Respondents, and a declaration that Respondents "shall not receive any property, damages, or costs that are awarded to the

4

Decedent's estate, regardless whether that person's entitlement is under a will, a trust, or the laws of intestacy."

On June 9, 2014, Respondents filed a demurrer to the complaint on multiple grounds including that Rick's claims were related to those claims asserted in the pending 2013 probate proceeding and hence his claims should have been filed as a compulsory cross-complaint in that proceeding.

Rick did not file an opposition to Respondents' demurrer.

C.      *The third complaint (SC122503, initially assigned to Judge Lisa Hart Cole)*

The third complaint is Melissa's civil complaint against Respondents and Daniel Bernato (Trista's husband) filed on May 5, 2014. Melissa's complaint alleges causes of action for, inter alia, financial elder abuse, breach of fiduciary duty and conversion. The complaint seeks, among other things, monetary damages and "a constructive trust be imposed upon all assets and property converted and received by [Respondents]."

On June 18, 2014, Respondents filed a demurrer to the complaint and argued, inter alia, that the compulsory cross-complaint rule barred the entire action.

On March 9, 2015, Melissa filed an opposition to the demurrer.

II.     **Procedural history**

In the two 2014 actions,[2] Judge Lawrence H. Cho issued a single tentative ruling that sustained Respondents' demurrers to Appellants' two complaints without leave to amend on the ground that the compulsory cross-complaint rule barred the claims alleged

---

[2] Respondents represent that they "had the separately-filed complaints coordinated under Los Angeles Superior Court local rules." The tentative ruling identifies in the header two complaints filed on "5/5/14 [and] 2/17/14" (corresponding to Rick and Melissa's two complaints) and the following two numbers corresponding to Rick and Melissa's two actions: "SC122503 (R/T SC122042) [¶] SC122042 (R/T SC122503)." The tentative ruling states, "Demurrers are SUSTAINED WITHOUT leave to amend."

in those complaints.[3]  The court found that the three complaints all concerned disputes over the disposition of Betty's estate and one side's allegations that the other side committed elder abuse and exercised undue influence over Betty to procure favorable estate-planning documents.  Because the pending actions and proceeding concerned overlapping factual and legal issues, the court found that the logical relation test had been met.[4]

On April 8, 2015, Judge Cho entered two separate orders in the respective cases that dismissed with prejudice, and without leave to amend, Melissa's action against Respondents and Rick's action against Respondents.

Melissa and Rick filed separate notices of appeal; Respondents made a motion to consolidate the two appeals; and we granted the request and consolidated the appeals. Rick and Melissa filed separate opening briefs; Respondents filed a single consolidated brief; and only Melissa filed a reply brief.[5]

The parties filed three separate requests for judicial notice.  On October 23, 2015, Rick requested judicial notice of Respondents' 2013 complaint, his anti-SLAPP motion and supporting declarations, the order granting in part and denying in part the anti-SLAPP, and his notice of appeal from that order.  We deny Rick's request for judicial notice of the 2013 complaint because it is duplicative of documents already in the appellate record.  (See *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 406, fn. 12.)  We deny Rick's request for judicial notice of his anti-SLAPP motion because the version of the exhibits he submitted is missing several pages.  We grant

---

[3] It is unclear from the appellate record when or how the cases became assigned to Judge Cho.

[4] The court stayed the remaining claims (Melissa's claims against Daniel, who was not a moving party to the demurrer) and ordered Appellants to file notices of related cases that assert those remaining claims and the pending probate proceeding are related.

[5] We note that Melissa frequently failed to include point page citations in her citations to legal authority.  (See Cal. Style Manual (4th ed. 2000) § 1:1[E], pp. 5–6; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

6

Rick's request to take judicial notice of the order granting in part and denying in part the anti-SLAPP motion. We deny Rick's request for judicial notice of his notice of appeal as it is already part of the appellate record as submitted by Melissa in her appellant's appendix.

Because Melissa's November 9, 2015 request for judicial notice of the 2013 complaint is duplicative of documents already in the appellate record, we deny her request. (See *Bravo Vending v. City of Rancho Mirage*, *supra*, 16 Cal.App.4th 383, 406, fn. 12.)

On January 22, 2016, Respondents asked us to take judicial notice of their 2013 complaint, Rick's anti-SLAPP motion and supporting exhibits, Respondents' opposition to that motion, and Rick's reply in support of the anti-SLAPP motion. On February 9, 2016, we granted Respondents' request as to the 2013 complaint. We now grant Respondents' request for judicial notice of Rick's anti-SLAPP motion, their opposition to Rick's anti-SLAPP motion, and Rick's reply in support of the motion.

## DISCUSSION

### I. Standard of review

"We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading stated facts sufficient to constitute a cause of action." (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958 (*Align Technology*).)

When reviewing a demurrer, we "treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We also consider matters subject to judicial notice. (*Ibid.*) To determine whether the trial court should have granted leave to amend, we consider whether on the pleaded and judicially-noticed facts there is a reasonable possibility of an amendment that would cure the legal defects in the complaint. (*Ibid.*)

### A. *Respondents' 2013 complaint concerns a "special proceeding," not an "action."*

Code of Civil Procedure section 426.30, subdivision (a) sets forth the compulsory cross-complaint rule in civil actions: "Except as otherwise provided by statute, if a party

7

against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." Section 426.10, subdivision (c) defines a "'[r]elated cause of action'" as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint."

The purpose of the compulsory cross-complaint statute is to prevent piecemeal litigation. (*Align Technology*, *supra*, 179 Cal.App.4th at p. 959.) In discussing the predecessor of Code of Civil Procedure section 426.30, the California Supreme Court explained "that because '[t]he law abhors a multiplicity of actions . . . the obvious intent of the Legislature . . . was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. [Citation.] Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion.'" (*Ibid*.)

In order to advance the statute's purpose of avoiding a multiplicity of actions, we liberally construe the statute to encourage the joining of claims when appropriate. (*Ranchers Bank v. Pressman* (1971) 19 Cal.App.3d 612, 619–620 [discussing predecessor statute]; *Align Technology*, *supra*, 179 Cal.App.4th at pp. 959–960.)

When a defendant has failed to allege a related cause of action in a cross-complaint in a prior action, the bar of the compulsory cross-complaint rule can form the basis of a demurrer in the subsequent action. (See, e.g., *AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313–1314.)

Code of Civil Procedure section 426.60, subdivision (a) provides that article 2 governing compulsory cross-complaints applies only to civil actions and does not apply to special proceedings. An "action" is "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a

8

right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) "Every other remedy is a special proceeding." (Code Civ. Proc., § 23.)

Appellants are correct that probate proceedings are special proceedings, not civil actions. (*Coberly v. Superior Court* (1965) 231 Cal.App.2d 685, 690.) The probate court is a department of the superior court that exercises its jurisdiction in proceedings that concern the administration of a decedent's estate including proceedings to probate a will and will contests as well as proceedings to determine entitlement to distribution of a decedent's estate and the subsequent distribution thereof. (Prob. Code, §§ 7050, 8200, 11600, 11700; *Estate of Bowles* (2008) 169 Cal.App.4th 684, 695.) "The jurisdiction of the probate court is in rem and the res is the decedent's estate." (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 1003.) "At any time after a decedent's death, an interested person may commence proceedings for administration of the estate of the decedent" and petition to the probate court for an order for probate of the decedent's will. (Prob. Code, § 8000.) Thus, a petition for the probate of a will is "the first step in a special proceeding," not a civil action where one party prosecutes another. (*Estate of Raymond* (1940) 38 Cal.App.2d 305, 307.)

As a court with general subject matter jurisdiction over the decedent's property, however, the probate court has the power to "resolve competing claims over the title to and distribution of the decedent's property." (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 952; *Estate of Kraus* (2010) 184 Cal.App.4th 103, 114.) When the probate court "has jurisdiction over one aspect of a claim to . . . property, [it] can determine all aspects of [that] claim." (*Estate of Baglione* (1966) 65 Cal.2d 192, 196-197; *Estate of Bowles*, *supra*, 169 Cal.App.4th at pp. 695–696.)

Here, after Rick initiated the 2013 probate proceeding by filing a petition to probate the 2009 Will, Respondents prosecuted their elder abuse, breach of fiduciary duty, conversion, and related claims that concerned the distribution of Betty's estate in

the same probate proceeding. Respondents' 2013 complaint therefore concerned a "special proceeding."[6]

Respondents do not dispute that probate proceedings generally are special proceedings rather than civil actions; they nevertheless argue that only matters within the exclusive jurisdiction of the probate court (e.g., a proceeding to administer a trust or a will contest) are "special proceedings" and that matters within the concurrent jurisdiction of the probate court are "actions." Respondents fail to cite any legal authority supporting this contention.

Indeed, the California Supreme Court has disapproved of a similar argument when determining whether, in a probate proceeding initiated by a petition to probate a will, a subsequently-filed will contest (due to its adversarial component, seemingly in the nature of a civil action where one party prosecutes another) is a "special proceeding" or an "action." In *Estate of Joseph* (1897) 118 Cal. 660, the Supreme Court explained, "We think, without doubt, a petition to probate a will is the beginning of a special proceeding. . . . We cannot see how the filing of grounds of opposition to the probate of the will, or, later, the filing of a petition to contest the probate, can change the nature of the proceeding. . . . In all subsequent stages, the contest is but a part of the proceeding to probate the will, and is not a new and distinct proceeding. . . . [I]t receives all its vitality from, and has its origin in, the original petition to probate the will and the statutory provisions governing the proceedings." (*Id.* at p. 662.)

Similarly here, Respondents' 2013 complaint was part and parcel of the pending special proceeding (initiated by a petition to probate a will) in which Respondents filed it. (See *Estate of Joseph*, *supra*, 118 Cal. at p. 662.) The complaint did not and could not have "change[d] the nature" of the special proceeding. (*Ibid.*) Respondents do not claim

---

[6] Rick and Melissa's two civil complaints initiated "actions." Although Rick argues that he filed his complaint as a "probate proceeding", the first page of the complaint describes the document as "Unlimited Civil" and contains a civil case number (SC122042).

10

that they initiated a "new and distinct proceeding" from the special proceeding.[7]  (*Ibid.*) Rather, their complaint "receive[d] all its vitality from, and has its origin in, the original petition to probate the will."  (*Ibid.*)

Nevertheless, our analysis does not end there because, as discussed below, the Probate Code incorporates the compulsory cross-complaint rule set forth in Code of Civil Procedure section 426.30, subdivision (a).

**B.**     ***The Probate Code incorporates the compulsory cross-complaint rule set forth in Code of Civil Procedure section 426.30, subdivision (a).***

Probate Code section 1000 provides, "Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions, including discovery proceedings and proceedings under Title 3a (commencing with Section 391) of Part 2 of the Code of Civil Procedure, apply to, and constitute the rules of practice in, proceedings under this code. All issues of fact joined in probate proceedings shall be tried in conformity with the rules of practice in civil actions."

Thus, the provisions of the Code of Civil Procedure apply in circumstances where the Probate Code provides no special or inconsistent rule.  (*Swaithes v. Superior Court* (1989) 212 Cal.App.3d 1082, 1088–1089.)  The California Supreme Court has explained that probate proceedings "are to conform only 'as nearly as is consistently possible, to those for civil actions.'"  (*Estate of Neilson* (1962) 57 Cal.2d 733, 747–748, italics omitted.)

Many sections of the Code of Civil Procedure have been held applicable to probate proceedings pursuant to Probate Code section 1000 or its predecessor statute. (See, e.g., *Katzenstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759 [§ 581d, written order signed by court]; *Mota v. Superior Court* (2007) 156 Cal.App.4th 351 [discovery: depositions, interrogatories, requests admission]; *Swaithes v. Superior Court* (1989) 212

---

[7] Rick and Respondents filed their respective petition for probate of the 2009 Will and 2013 complaint in the same case (LP017194).

Cal.App.3d 1082 [§ 36, preference to party who reached the age 70 years]; *Voyce v. Superior Court* (1942) 20 Cal.2d 479 [§ 387, intervention]; *Estate of Morrison* (1932) 125 Cal.App. 504 [former § 583, dismissal of action not brought to trial within 5 years].)

The parties have not directed us to any provision in the Probate Code that precludes a compulsory cross-complaint rule.[8]

Indeed, these consolidated appeals exemplify the public policy reasons for applying in probate proceedings the compulsory cross-complaint rule in Code of Civil Procedure section 426.30, subdivision (a). Appellants have disregarded this court's and the trial court's limited resources in filing not one but two duplicative actions identical to the one they are defending in the probate court. A separate trial, or trials, subsequently conducted before a different court would entail a pointless duplication of time and effort. Whether Appellants have attempted to forum shop or to obtain second and third bites at the apple is not material to our decision; regardless of their underlying motives, they tried to litigate in separate forums the same issues pending before the probate court. We can discern no reason why persons should be able to advance multiple identical actions and proceedings simply because they are defendants originally sued in the probate court rather than in a civil action on the general civil calendar of the superior court. Accordingly, we agree with the trial court and Respondents that the compulsory cross-complaint rule applies here.

---

[8] Although Melissa relies on Assembly Bill No. 1893 (2011–2012 Reg. Sess.) to argue that the bill provided for an exemption from complying with the compulsory cross-complaint rule in probate court, she represents that the bill died in committee. We attach little value to a bill that the Legislature failed to pass. (*Martin v. Szeto* (2004) 32 Cal.4th 445, 451; *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1349–1350.) Further, because Melissa failed to provide any substantive legal argument or citation of authorities, we treat as forfeited her one-sentence conclusory argument comprised entirely of the following incomplete sentence: "Moreover, other rules and deadlines already exist and suffice to ensure that all issues concerning the administration and distribution of a decedent's estate." (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [party waives issue not supported by legal argument with citation of authorities]; *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457–1458.)

*C.     Rick and Melissa's 2014 actions are logically related to Respondents' 2013 complaint.*

We now apply the compulsory cross-complaint rule to the facts in this case. As explained below, Appellants' argument that the causes of action asserted herein are not sufficiently related is without merit.

The test is whether the subsequent cause of action "arises out of the same transaction, occurrence, or series of transactions or occurrences," as the previous cause of action. (Code Civ. Proc., § 426.10, subd. (c).)

In order to effectuate the purpose of the statute to prevent piecemeal litigation and to avoid a multiplicity of actions, we apply the logical relation test expansively and construe the statutory term "transaction" broadly to encourage the joining of claims as appropriate. (*Align Technology*, *supra*, 179 Cal.App.4th at pp. 959–960; *Ranchers Bank v. Pressman*, *supra*, 19 Cal.App.3d at p. 619 [discussing predecessor statue].) Rather than limiting a transaction to "a single, isolated act or occurrence," for example, a contract, a lease, or an automobile collision, we construe a transaction to include a series of "logically interrelated" acts or occurrences. (*Align Technology*, *supra*, 179 Cal.App.4th at p. 960; *Saunders v. New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 336 [discussing predecessor statute].) The test for whether two causes of action arise out of the same transaction does not require the claims to have an identical factual background but rather they need only have a logical relationship. (*Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777.) The rationale is a practical one: when separate resolution of the claims would require an unnecessary duplication of time and effort due to overlapping factual or legal issues, the logical relation test is likely met. (*Ibid.*)

Here, the superior court correctly found that the series of transactions at the foundation of Respondents' 2013 complaint and Appellants' 2014 complaints were the competing estate-planning documents executed by Betty and the distribution of Betty's estate.

13

For example, Respondents' 2013 complaint alleges that Appellants improperly procured the 2009 Will and that such actions constituted financial elder abuse and a breach of Appellants' fiduciary duty to Betty. The allegations continue that, as a result of the improperly-procured 2009 holographic will, the property of Betty's 2003 Trust was "transferred" to a special administrator (Rick) pursuant to the 2009 Will rather than the trustee (Christine) pursuant to the 2003 Trust and that such actions constituted conversion. The complaint requests the imposition of a constructive trust upon the property of Betty's estate pursuant to the 2003 Trust and a declaration that Appellants "have forfeited any interest under the Estate of Betty E. Peasley and any valid estate plan of Betty E. Peasley, pursuant to the provisions of Probate Code section 259." The ultimate result, if Respondents are successful on their claims, is to affect the distribution of Betty's estate in Respondents' favor.

Likewise, Appellants' 2014 claims arose out of the same estate planning documents allegedly executed by Betty and the distribution of Betty's estate. Specifically, Melissa's complaint pleaded various allegations of elder abuse and breach of fiduciary duty including that Respondents "attempt[ed] to prevent [Betty] from consulting with an attorney or making desired changes to her estate plan" but that Betty was ultimately successful in executing the 2009 Will and "plac[ing] it with [Melissa] for safe-keeping." The complaint also alleged that Rick, after filing a petition to probate the 2009 Will and subsequently investigating Betty's assets in his role as special administrator, discovered the actions by Respondents that formed the basis of Melissa's elder abuse claim. The allegations continued that because of Respondents' allegedly wrongful taking of Betty's assets (including by using the funds in Betty's bank account for Respondents' personal benefit) thus "depriving [her rightful] heirs—including [Melissa]—of their full inheritance," Respondents committed conversion and "have been unjustly enriched." The complaint therefore sought, inter alia, an imposition of a constructive trust upon the assets "converted and received by" Respondents—effectively, the assets of Betty's estate at the center of the dispute between the parties over the competing estate-planning documents.

14

Similarly, Rick's complaint alleged that Respondents committed elder abuse, conversion, and breach of fiduciary duty, related to Betty's estate planning and the final distribution of the assets in her estate. For example, the complaint alleged that Betty "wanted to change her estate plan to a testamentary scheme that . . . would result in a reduced inheritance to [Respondents,]" but Respondents attempted to prevent Betty from doing so, specifically by confiscating Betty's checkbook when Respondents discovered that Betty "had written a retainer check to a new estate-planning attorney." The complaint also alleged that Respondents improperly used Betty's assets and property including by writing checks to withdraw funds from Betty's bank accounts in order to use the money for their personal benefit rather than for Betty's benefit. The complaint therefore sought an imposition of a constructive trust upon "whatever monies and property held by [Respondents] . . . that have their source traceable to the proceeds from the monies and property wrongfully taken from Decedent, or otherwise rightfully belonging to Plaintiff" (again, effectively the assets of Betty's estate at the center of the parties' dispute over the competing 2003 Trust and 2009 Will).

Importantly, Probate Code section 259 restricts the inheritance from a decedent by a person who has abused the decedent. If Appellants prevail on their elder abuse claims, that would affect the distribution of Betty's estate in their favor. Relying on this prohibition, Rick's complaint seeks a declaration that Respondents "shall not receive any property, damages, or costs that are awarded to [Betty's] estate."

The superior court has correctly concluded that the claims of Appellants and Respondents involve common issues of law and fact: their respective actions in their treatment of Betty (e.g., procuring, or precluding the other parties from procuring, estate-planning documents in their favor), Betty's state of mind and intention for the distribution of her estate, and the validity of the competing estate-planning documents executed by Betty (that determines the distribution of Betty's estate). The ultimate distribution of Betty's estate is central to the claims of Appellants and Respondents. Further, the majority of Appellants' causes of action are identical to the ones alleged earlier by

15

Respondents in their 2013 complaint—elder abuse, breach of fiduciary duty and conversion. (See *Align Technology*, *supra*, 179 Cal.App.4th at p. 962.)

Finally, the relief sought by both Rick and Melissa in transferring the assets of Betty's estate to a separate constructive trust is in obvious conflict with the pending proceeding in the probate court tasked with distribution of Betty's estate. Similarly, as a result of their respective elder abuse claims, both sides seek a declaration that prohibits the other side from receiving an inheritance from Betty. In sum, the claims are sufficiently related to bring them within the compulsory cross-complaint rule.

For the above reasons, we also reject Appellants' arguments that their 2014 complaints allegedly only concern "monetary issues," specifically Respondents' alleged "taking of money in the years leading up to Mrs. [Betty] Peasley's death," and therefore their complaints allegedly are not logically related to Respondents' 2013 complaint.

However, Respondents concede that even if we affirmed the superior court's ruling that dismissed Appellants' complaints, Appellants may ask leave of the probate court to file cross-complaints in the probate proceeding.[9] Rather than dismissal of the complaints, an order designating the two underlying cases as related to the pending probate proceeding is the appropriate outcome here. (See Cal. Rules of Court, rule 3.300; Super. Ct. L.A. County, Local Rules, rules 3.3, 4.22.) The goals of these rules are to promote judicial efficiency, to prevent parties from "judge shopping," and to avoid the possibility of conflicting rulings. Thus, we reverse the judgment with directions to designate the two underlying actions as related to the pending probate proceeding. We leave to the probate court to determine in the first instance whether consolidation of the cases is also appropriate. (See Cal. Rules of Court, rule 3.350; Super. Ct. L.A. County, Local Rules, rule 4.21.) Further, as the superior court did not reach the other issues raised in Respondents' demurrers because it concluded that the compulsory cross-

---

[9] Respondents further stated that if the superior court did not sustain their demurrers, they intended to bring a motion to consolidate.

16

complaint rule applied and ordered dismissal of the two complaints, Respondents may raise those issues before the probate court for a determination of those issues in the first instance.

## DISPOSITION

The orders and judgments are reversed.  The superior court is directed to designate Nos. SC122042 and SC122503 as related to No. LP017194.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

17