Filed 3/25/21  Ren v. Ma CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| BOXI REN et al., | B299023 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. KC069135) |
| v. | |
| IVORY MA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dan Thomas Oki and Gloria White-Brown, Judges.  Reversed and remanded with directions.

Law Office of Gregory N. Albright and Gregory N. Albright for Defendants and Appellants.

Yoka & Smith, Chad Chen and Nicholas von der Lancken, for Plaintiffs and Respondents.

Defendants Ivory Ma (Ma) and Powerful Auto Group (PAG) thrice sought to file a cross-complaint against plaintiffs Boxi Ren and Kun Wendian. Each time they were rebuffed because the trial court believed defendants delayed, without sufficient excuse, in seeking leave to file the cross-complaint. Later, following a bench trial on mostly stipulated facts concerning a failed luxury automobile purchase deal, the trial court entered judgment for plaintiffs. We consider whether the trial court should have permitted defendants to file a cross-complaint with claims that arose out of the same auto purchase course of dealing alleged in Plaintiffs' complaint.

## I. BACKGROUND

### A. *Plaintiffs' Complaint, and Defendants' Attempts to File a Cross-Complaint*

Plaintiffs are Chinese citizens who conduct business in California. In March 2017, Plaintiffs sued PAG and its president, Ma, for allegedly failing to deliver certain luxury automobiles to them in China.[1] According to their complaint, Plaintiffs entered into an oral agreement with Defendants in early 2016 for the purchase of nine luxury vehicles (mostly Mercedes Benz GL450s and at least one Land Rover Range Rover HSE) and paid Defendants a down payment of $309,500. Two of the nine

---

[1] In their complaint, Plaintiffs asserted the following seven causes action: breach of contract, money had and received, open book account, intentional misrepresentation, negligent misrepresentation, false promise, and violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200, et seq.). The trial court ultimately found against Plaintiffs on their misrepresentation, false promise, and UCL claims.

2

vehicles were delivered to Plaintiffs with the purchase price of those vehicles ($189,450) deducted from the down payment. The remaining seven vehicles, however, were never delivered to Plaintiffs. Plaintiffs sought to recover the balance of their down payment ($120,050).

One year into the litigation and five weeks before trial was scheduled to begin, Defendants applied ex parte for leave to file a cross-complaint.[2] In their proposed cross-complaint, Defendants alleged the parties had been in communication about the sale and shipment of luxury automobiles to China since 2014 and that the 2016 agreement for nine vehicles alleged in Plaintiffs' pleading was part of a larger transaction involving six additional vehicles for a total purchase price of $1.36 million. Defendants further alleged they purchased and shipped eight of the contracted 15 vehicles to China, but Plaintiffs failed to pay the outstanding balance on those vehicles. As a result, Defendants were forced to sell the vehicles at substantially lower prices than the ones agreed to by Plaintiffs. By their proposed cross-complaint, Defendants sought to recover $525,279.

In a declaration supporting the application, Defendants' attorney generally explained his clients only recently discovered the factual basis for their claims due to high turnover among PAG's bookkeeping and accounting staff. Plaintiffs did not file an opposition to the application to file the proposed cross-complaint.

---

[2]    In their initial proposed cross-complaint, Defendants asserted the following six causes of action: breach of contract, anticipatory breach, intentional misrepresentation, negligent misrepresentation, account stated, and breach of the covenant of good faith and fair dealing.

3

The trial court nevertheless denied the application. The court's denial order withheld permission to file the cross-complaint because "[t]here is no declaration as to what additional information was discovered[,] when it was discovered, and why it could not have been discovered earlier."

The very next day, Defendants filed a second ex parte application for leave to file the same proposed cross-complaint. In support, Defendants' counsel filed an expanded declaration detailing the delayed discovery of information regarding the six additional vehicles that were allegedly part of the transaction described in Plaintiffs' complaint. Among other things, counsel explained the search for relevant documents was complicated by the fact that some of the vehicles purchased by Defendants for Plaintiffs had been sold at auction or traded for attorney fees in other cases to mitigate the damages arising from Plaintiffs' refusal to pay for the vehicles. In addition, Ma submitted a declaration stating her bookkeeper/accountant had changed "multiple times" since the inception of the litigation, which caused confusion about prior transactions.

As before, Plaintiffs did not oppose this renewed application to file the cross-complaint. The trial court, however, denied the application for a single reason stated in its minute order: "The application is untimely."

Ten days later, pursuant to a stipulation by the parties that they had acted "diligently" throughout the proceedings, the trial court extended the discovery cut-off date and continued the trial. The parties then stipulated twice more to continuing the discovery and trial dates, agreeing each time that both sides had acted diligently in litigating the matter, and the trial court approved the stipulations.

4

In April 2019, eight days before a bench trial on Plaintiffs' complaint was scheduled to begin, Defendants asked for leave to file a cross-complaint once more. Although the essential facts alleged in the proposed cross-complaint remained the same as before (i.e., in January 2016, Plaintiffs ordered the purchase and delivery of 15 luxury vehicles from Defendants for the total price of $1.36 million), this cross-complaint was less ambitious than the prior two—asserting only a single cause of action for breach of contract.[3]

Defendants' third application to file a cross-complaint was accompanied by a declaration authored by their new attorney of record. The declaration explained that since the denial of their two prior applications they had discovered additional relevant documents in China regarding the parties' agreement and course of dealing, including voice messages which needed to be translated from Mandarin.

This time, Plaintiffs opposed Defendants' application for permission to file a cross-complaint. The sole ground for Plaintiffs opposition was that the application was untimely and if leave were granted, it would be prejudicial in that "the trial date will be greatly delayed as additional discovery and depositions will be required."

The trial court[4] stated it needed additional facts to determine whether Defendants had acted in bad faith by bringing their third application to file a cross-complaint. Accordingly, the

---

[3]     In addition, Defendants reduced the amount of their claimed damages to $205,745.

[4]     In between the second and third applications for leave, the case had been re-assigned to a different trial judge.

court continued the hearing on the application so that Defendants could submit additional evidence about the discovery of the new documents.

Defendants' counsel submitted a second declaration describing how Ma, while in China in December 2018, came back into possession of one of her old cell phones (which she had given to a niece after Plaintiffs filed suit) and discovered WeChat voice records on that phone between her and one of the Plaintiffs. When Ma returned to the United States in early 2019, she delivered the WeChat records to her counsel who translated the communications personally. The translation of the WeChat records proved to be difficult and time-consuming for counsel due to differences in dialect and accent. Once the translation was completed in mid-March 2019, defense counsel began preparing a revised version of the cross-complaint and an application for permission to file it.

Plaintiffs filed a supplemental opposition after this second declaration from counsel was filed. Plaintiffs argued the trial court had twice before denied leave to Defendants to assert cross-claims based on nearly identical facts as those found in the revised proposed cross-complaint and reiterated that granting the application would require postponement of the trial and a re-opening of discovery.

The trial court denied Defendants' application to file a cross-complaint, stating at the hearing that Ma should have known she had relevant information on her old cellphone before giving it away to her niece. The trial court did not find Defendants were seeking leave to file a cross-complaint in bad faith. Rather, the court denied the application solely because it was untimely.

6

### B. Trial of Plaintiffs' Complaint, Largely on Stipulated Facts

A bench trial on Plaintiffs' complaint was held largely on stipulated facts. What immediately follows are the facts to which the parties agreed.

The parties orally agreed on the sale and purchase of a certain number of vehicles.[5] Pursuant to the parties' agreement, Plaintiffs made a down payment in the amount of $307,000 to PAG for the purchase of the contracted-for vehicles; the down payment was made in four installments with the first occurring on January 19, 2016, and the fourth on February 29, 2016.[6] On January 20, 2016, PAG issued an invoice for two vehicles (two 2016 model-year Mercedes Benz GL450s (the invoiced Mercedes)).[7] The invoiced Mercedes were ultimately delivered to Plaintiffs. The total purchase price for those two vehicles ($189,450) was deducted from Plaintiffs' down payment.

---

[5] The parties, however, did not stipulate to the number, type, and delivery date for the vehicles, or how and when Defendants would receive the balance of the purchase price for all of the contracted vehicles.

[6] The parties also stipulated to the accuracy and authenticity of copies of bank records from PAG's account evidencing four wire transfers from Plaintiffs. Although those records have handwritten notations on them, the parties did not stipulate to who made those notations or the meaning and significance of them.

[7] The parties also stipulated to the accuracy and authenticity of a copy of the January 20, 2016, invoice.

Plaintiffs did not receive a refund of the remainder of their down payment for vehicles that were never sold to them. In January 2017, Plaintiffs made a final demand for the return of the remainder of their down payment.

Based on only these stipulated facts, Plaintiffs argued they were entitled to the remainder of their down payment under one of three theories of recovery (breach of contract, money had and received, and open book account) because they never received any of the contracted vehicles other than the two invoiced Mercedes vehicles.

Defendants contended otherwise. Defendants argued the parties contracted for 15 vehicles, not nine, and Defendants used the entirety of Plaintiffs' down payment to purchase all of the contracted-for vehicles. To support their position, Defendants relied on the same stipulated facts, and also on records they proffered that were not subject to the parties' stipulation. In particular, Defendants pointed to invoices issued to PAG from another automotive dealer during January to March 2016 for more than a dozen Mercedes Benz GL450s and two Range Rover HSEs (the PAG invoices), plus translations of WeChat communications between Ma and Wendian.[8] In addition, Defendants argued four other Mercedes Benz GL450s besides the invoiced Mercedes were delivered to Plaintiffs in China. In

---

[8]   In their reply trial brief, Plaintiffs maintained the PAG invoices were irrelevant and the WeChat translations inadmissible. In its statement of decision, the trial court discussed Defendants' evidence that was not subject to the parties' stipulation, including the PAG invoices and WeChat translations, but the court did not acknowledge or rule on Plaintiffs' objections to that evidence.

support of this assertion, Defendants produced four bills of lading—one from March 2016 and three from May 2016—indicating four Mercedes Benz GL450s with vehicle identification numbers different from the invoiced Mercedes were shipped to China.

In their trial brief, Defendants conceded there was a delay until November 2016 in delivering nine of the contracted vehicles "due to legal issues arising out of a separate and unrelated legal matter." However, the translated WeChat communications between Ma and Wendian arguably indicated Plaintiffs refused to accept those vehicles for reasons other than the delay in delivery; those reasons included the following: Plaintiffs had "no use for so many cars" and the Mercedes Benz GL450s were "old styled," "hard to sell," and "difficult to handle." Defendants did not present any evidence or offer argument about the losses they purportedly sustained when (as they asserted in their proposed cross-complaints that they never received permission to file) Plaintiffs breached the parties' agreement.

### C.     The Trial Court's Decision

After receiving the parties' written submissions, the trial court found Defendants liable on Plaintiffs' causes of action for breach of contract, money had and received, and open book account. The court determined that the parties "entered into an oral contract, wherein Plaintiffs agreed to pay a certain amount of money to purchase certain vehicles and Defendants agreed to supply and deliver said vehicles." The court found that while Defendants delivered the invoiced Mercedes to Plaintiffs, Defendants failed to timely deliver any of the other contractually required vehicles and that a nine to 10-month waiting period

9

"exceed[ed] a reasonable time period that one would expect in this situation." The court accordingly awarded Plaintiffs $120,050 in compensatory damages.

## II. DISCUSSION

The trial court erred when it denied Defendants' second and third ex parte applications for leave to file a cross-complaint because those cross-complaints were compulsory, the law requires a court to grant permission to file a compulsory cross-complaint if the cross-complaining party acted in good faith, and there was no finding—nor any substantial evidence—that Defendants here acted in bad faith. Because this holding requires reversal of the judgment, and because resolution of Defendants' cross-complaint will require a redetermination of facts that overlap with Plaintiffs' theory of liability, we find it unnecessary to address whether the judgment (which we will reverse) was supported by substantial evidence. That can be addressed, if there is a need, in an appeal from the new judgment the trial court will ultimately be required to enter.

### A. *Governing Law*

"[T]he Legislature has created a distinctive statutory scheme regulating compulsory cross-complaints." (*Sidney v. Superior Court* (1988) 198 Cal.App.3d 710, 717.) That scheme is designed to prevent "piecemeal litigation." (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436.) "The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the counterclaim statutes [citation] was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction.

10

[Citation.]" (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393.)

The Code of Civil Procedure defines a compulsory cross-claim as one that "arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (Code Civ. Proc.,[9] § 426.10, subd. (c).) Section 426.30, subdivision (a) describes the consequence for failing to allege a compulsory cross-claim: "Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded."

The "relatedness standard 'requires "not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them.'" [Citation.]" (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 960 (*Align Technology, Inc.*); accord, *Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777 [logical relationship existed between contending claims because they "involve[d] common issues of law and fact," an "overlap of issues," and a "common transaction"].) Accordingly, "'transaction' is construed broadly; it is 'not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated [citations].'" (*Align Technology, Inc.*, *supra*, at 960.) We review the question of whether a cross-complaint

---

[9]     Undesignated statutory references are to the Code of Civil Procedure.

11

alleged a "related cause of action" de novo. (*Id*. at 958; accord, *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 564.)

Section 426.50, the statutory provision at the heart of this appeal, addresses the trial court's authority to grant leave to file a compulsory cross-complaint. It provides, in relevant part: "A party who fails to plead a cause of action subject to the requirements of this article, whether through oversight, inadvertence, mistake, neglect, or other cause, may apply to the court for leave . . . to file a cross-complaint, to assert such cause at any time during the course of the action. The court, after notice to the adverse party, shall grant, upon such terms as may be just to the parties, leave . . . to file the cross-complaint, to assert such cause if the party who failed to plead the cause acted in good faith. This subdivision shall be liberally construed to avoid forfeiture of causes of action."

Forfeiture of a cause of action is justified only where the prospective cross-complainant has acted in bad faith. "A motion to file a cross-complaint at any time during the course of the action must be granted unless bad faith of the moving party is demonstrated where forfeiture would otherwise result. Factors such as oversight, inadvertence, neglect, mistake or other cause, are insufficient grounds to deny the motion unless accompanied by bad faith." (*Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 99 (*Silver*).)

"Substantial evidence of bad faith will obviously negate good faith, the latter being the sine qua non to the granting of a section 426.50 motion . . . . "'Bad faith' is defined as "[t]he opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual

12

obligation, not prompted by honest mistake . . ., but by some interested or sinister motive[,] . . . not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.  [Citation.]"  [Citations.]'" (*Silver*, *supra*, 217 Cal.App.3d at 100; accord, *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 559-560 [conduct showing that a proposed cross-complaint is "merely a tactical, strategic maneuver" may constitute evidence of bad faith].)

What constitutes bad faith must be determined in light of the liberality conferred upon the trial court by section 426.50. Hence, a "strong showing" of bad faith must be made to support denial of the right to file a compulsory cross-complaint.  (*Foot's Transfer & Storage Co. v. Superior Court* (1980) 114 Cal.App.3d 897, 902 (*Foot's Transfer*).)

> **B.**     *Reversal of the Judgment Is Required Because There Is No Substantial Evidence the Second and Third Applications to File a Cross-Complaint Were Brought in Bad Faith*

In both of its iterations, Defendants' proposed cross-complaint involved the same transaction as the one alleged in Plaintiffs' complaint: the parties' agreement in early 2016 pursuant to which Plaintiffs would pay Defendants for the delivery of certain luxury automobiles to them in China.  The principal substantive difference between the negotiations as described in Plaintiffs' pleading and those as alleged in Defendants' proposed cross-complaint was the number of vehicles involved.  Because there was a logical relationship linking the

13

parties' actual and proposed pleadings, Defendants' cross-claims were compulsory in nature. Moreover, Defendants' compulsory cross-claims were viable because they existed at the time of Defendants' answer. Consequently, as the trial court acknowledged at the time of the third application, it could deny Defendants' applications only upon a showing of bad faith.

The trial court, however, denied the second and third applications solely because they were untimely. That was error. "[T]he late filing of the motion to file a compulsory cross-complaint absent some evidence of bad faith is insufficient evidence to support denial of the motion." (*Silver*, *supra*, 217 Cal.App.3d at 101.) The fact that Defendants sought leave one month before a jury trial (later continued multiple times) and, later, eight days before the start of a bench trial limited to written submissions does not establish bad faith.[10] "[A]ny 'surprise' that may be visited on a party due to a belated motion pursuant to section 426.50 may be mitigated by postponement or other conditions to prevent injustice. The legislative committee comment to section 426.50 provides that, '[w]here necessary, the court may grant such leave [to file a cross-complaint] subject to terms or conditions which will prevent injustice, such as postponement or payment of costs.'" (*Ibid.*)

---

[10] At most, the record reveals evidence of benign neglect (not arranging for the orderly transition between bookkeepers) and poor judgment (giving away a cell phone following the initiation of the lawsuit without first confirming that it did not contain records of arguably relevant communications).

14

The error in denying permission to file the cross-complaint requires reversal. (*Silver*, *supra*, 217 Cal.App.3d at 100-102 [reversing judgment because substantial evidence did not support finding that borrowers were acting in bad faith by filing motion for leave to file compulsory cross-complaint on eve of trial].) Without a cross-complaint on file, Defendants presented no evidence of their losses from Plaintiffs' conduct alleged in their proposed cross-complaint. The trial court was also required to make no findings, and made no findings, on the cause(s) of action Defendants sought to assert. The failure to permit the filing of the cross-complaint was prejudicial. (*Foot's Transfer*, *supra*, 114 Cal.App.3d at 901 ["The granting of leave to file a cross-complaint is particularly of importance in avoiding forfeiture of causes of action because of the principle expressed in section 426.30 of the Code of Civil Procedure, that cross-complaints relating to the subject of the action must be filed therein or are deemed lost"].)

## DISPOSITION

The judgment is reversed. The cause is remanded to the trial court with instructions to permit Defendants to file a cross-complaint substantially in the form submitted with their third ex parte application to file a cross-complaint or, with leave of court, in any other form. The trial court shall thereafter permit the parties to litigate their claims to conclusion. The resolution of those claims may include reliance on facts previously stipulated to by the parties but may not include reliance on the findings the court made after the already-held bench trial—unless those

15

findings are uncontested by the parties.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.