Filed 2/22/24  Clean Up America v. Arrow Disposal Services CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CLEAN UP AMERICA, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ARROW DISPOSAL SERVICES, INC. et al., <br><br> Defendants and Respondents. | B323729 <br><br> (Los Angeles County Super. Ct. No. 21STCV36046) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

Law Office of Gronemeier & Hickambottom, Dale L. Gronemeier and Elbie J. Hickambottom, Jr., for Plaintiff and Appellant.

Stream Kim Hicks Wrage & Alfaro, Theodore K. Stream, Mario H. Alfaro and Donna M. DiCarlantonio for Defendants and Respondents.

\* \* \* \* \* \*

An out-of-business trash hauler sued one of its competitors for unfair competition in years past.  The hauler elected not to show up on the first day of trial, and its claims were dismissed.  By that time, however, the competitor had filed cross-claims for unfair competition.  When those cross-claims were on the verge of trial over two years later, the hauler filed a brand new lawsuit that largely repeated the allegations from its claims that were dismissed.  The trial court ruled that the new lawsuit was barred because it should have been brought as a compulsory cross-claim to the competitor's cross-claims in the first lawsuit.  We agree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Parties and Their Business Operations

#### A. *Clean Up America, Inc.*

From at least 2010 through 2016, Clean Up America, Inc. (Clean Up) operated as a commercial hauler of construction and demolition waste in Los Angeles.  It ceased its operations in 2016, when a fire that raged and then smoldered for six weeks destroyed its waste processing facility.

#### B. *The Arrow companies*

Arrow Services, Inc. (Arrow Services) and Arrow Disposal Services, Inc. (Arrow Disposal) (collectively, the Arrow companies) are also haulers of construction and demolition waste

2

in Los Angeles.  The president of the Arrow companies is Kirk Tahmizian.

### C. *Competition in the trash hauling industry*

Prior to Clean Up going out of business in 2016, Clean Up and the Arrow companies directly competed in the Los Angeles waste hauling industry.

## II. The First Lawsuit

### A. *Clean Up's complaint*

In December 2016, Clean Up sued (1) Arrow Services and (2) Tahmizian (the first lawsuit).  In the operative second amended complaint, which was filed in February 2018, Clean Up generally alleged that (1) Arrow Services induced customers to cancel their contracts with Clean Up and instead hire Arrow Services by misrepresenting that Clean Up was going out of business and would not be able to fulfill its hauling contracts; and (2) Arrow Services illegally dumped waste at the wrong disposal facilities to lower its operating costs, thereby obtaining an unfair competitive advantage.  Based on these allegations, Clean Up alleged claims for (1) inducing breach of contract, (2) intentional interference with prospective economic advantage, and (3) equitable relief for unlawful business practices under California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.); Clean Up sought equitable relief as well as $2.86 million in damages.

### B. *The Arrow companies' cross-complaints*

On March 1, 2017, Arrow Services filed a cross-complaint against Clean Up.  Arrow Services generally alleged that (1) Clean Up's illegal dumping of waste at its own disposal facility not only resulted in a historic fire, but also created an unfair competitive advantage for Clean Up by saving on disposal costs;

3

and (2) Clean Up induced customers to hire it by misrepresenting that Arrow Services charged higher fees due to its "inefficiency." Based on these allegations, Arrow Services alleged claims for (1) interference with existing and prospective economic relations and (2) unfair and unlawful business practices under the UCL; Arrow Services sought $1 million in damages. Clean Up filed an answer to Arrow Services' cross-complaint on October 23, 2018.

Although not sued by Clean Up in the first lawsuit, on June 26, 2018, Arrow Disposal also filed a cross-complaint against Clean Up.[1] This complaint exactly duplicated the cross-complaint filed by Arrow Services. Clean Up filed an answer to Arrow Disposal's cross-complaint on Halloween 2018.

---

[1] Arrow Disposal's insertion into the first lawsuit was procedurally proper because, once the existing parties to the first lawsuit elected not to object to its filing or involvement, Arrow Disposal became a de facto intervenor. (See Code Civ. Proc., § 387 [setting forth procedure for nonparty to intervene in action]; *Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 461 [de facto intervener (1) "has not been formally recognized by the court as an intervener pursuant to the procedure set forth in . . . section 387," and (2) "actually participates in the litigation in essentially the same way as a formally recognized party"]; *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 12-13 [court will excuse "failure to comply with section 387's requirements . . . where . . . the parties accepted the unapproved intervention without protest"].) By waiting until its reply brief on appeal to object to Arrow Disposal's insertion in the first lawsuit, Clean Up waived this very belated objection. (*Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 970, fn. 6 (*Piedmont Capital*) [arguments made for first time in reply brief are waived]; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 646 (*Gallo*) [same].)

## C.   *Dismissal of the first lawsuit*

Trial on Clean Up's claims in the first lawsuit was set for January 24, 2019, but Clean Up opted not to show up.  As a result, the trial court dismissed Clean Up's claims.  But the Arrow companies' cross-complaints remained pending.

Trial on the Arrow companies' cross-claims in the first lawsuit was set for October 14, 2021.  That trial did not go forward, and the Arrow companies' cross-complaints were later dismissed on May 4, 2022.

## D.   *Absence of any cross-claims by Clean Up*

At no point in time while the cross-claims filed by the Arrow companies were pending did Clean Up file any cross-claim to either cross-complaint.  At no point in time while Clean Up's claims were pending did Clean Up amend its own pleading in response to the cross-complaints.

## III.   The Second Lawsuit (This Lawsuit)

### A.   *Clean Up's complaint*

On September 30, 2021—two weeks before trial was set to begin on the Arrow companies' cross-claims in the first lawsuit—Clean Up brought a new lawsuit (the second lawsuit).  In the operative second amended complaint to this lawsuit,[2] Clean Up sued the Arrow companies and Tahmizian (collectively, defendants) on a single claim of unlawful competition under the UCL, generally alleging that defendants illegally disposed of waste to cut costs and charge customers less.  These allegations were substantively identical to the allegations supporting Clean Up's UCL claim in the first lawsuit.  Clean Up also alleged that

---

[2]     The parties litigated numerous motions on prior iterations of Clean Up's complaint.  Because those motions are not relevant to this appeal, we do not discuss them.

Arrow Services, Arrow Disposal, and Tahmizian were alter egos of one another, each being "responsible for the wrongdoing" of the other and for the "relief" sought by Clean Up.

### B.   *Defendants' motion to strike*

On April 28, 2022, defendants filed a motion to strike the operative complaint along with a request for judicial notice.  In their motion, defendants argued that Clean Up's filing of the second lawsuit violated the compulsory cross-complaint rule, codified in Code of Civil Procedure section 426.30,[3] because Clean Up did not assert its new UCL claim in the first lawsuit *as a cross-claim to* the Arrow companies' cross-complaints, and because this violation necessitated dismissal of the second lawsuit.  Following an opposition brief by Clean Up, a reply brief by defendants with a second request for judicial notice, an initial hearing, a third and fourth request for judicial notice by defendants, and another hearing, the trial court issued an 11-page ruling granting the motion to strike without leave to amend.[4]  The court also granted defendants' first and second requests for judicial notice.

The trial court reasoned that Clean Up's allegations in the second lawsuit are "the exact same allegations" it asserted in the first lawsuit; that such "parallels" "make clear" that Clean Up's

---

[3]   All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4]   Defendants had also filed a demurrer to the second amended complaint, which the trial court overruled as moot in light of its ruling granting the motion to strike.  Because we affirm that ruling granting the motion to strike, we have no occasion to reach the parties' further arguments regarding defendants' demurrer.

6

claims "arise out of the same events, transactions, etc."; that Clean Up knew of its UCL claim at the time it filed its answers to the Arrow companies' cross-complaints; and that the "policy" of section 426.30 requires that the claims all be "resolved in a single action."  "[N]o amendment," the trial court concluded, "can cure this defect."

## IV.    The Appeal

Following entry of judgment for defendants in the second lawsuit, Clean Up filed this timely appeal.

## DISCUSSION

Clean Up argues that the trial court erred in granting defendants' motion to strike its second amended complaint.

A defendant may move to strike "the whole or any part" of a complaint if, as pertinent here, it is "not drawn or filed in conformity with the laws of this state . . . ." (§§ 435, subd. (b), 436.)  Like a demurrer, the grounds for a motion to strike must appear on the face of the challenged complaint or from matters properly subject to judicial notice.  (§ 437.)  In reviewing an order granting a motion to strike, we read the allegations of the operative pleading "'as a whole, all parts in their context, and assume their truth.'"  (*Mitchell v. Atwell Islands Water Dist.* (2020) 45 Cal.App.5th 624, 628 (*Mitchell*); *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 53 [complaint's allegations "are assumed to be true"].)  We generally review a ruling striking a complaint for abuse of discretion,[5] but where the issue on appeal

---

[5]    We also review the denial of leave to amend for abuse of discretion (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1147), but we need not consider

7

presents a question of statutory interpretation applied to undisputed facts, we review the issue de novo. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309; *Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255.) We review a ruling granting a request for judicial notice for abuse of discretion. (*Physicians Com. for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182.)

## I.     Analysis

California's compulsory cross-complaint rule prohibits a party from asserting a claim in a new lawsuit if, at the time the party answered a complaint in prior litigation, it "fail[ed] to allege in a cross-complaint any [then-existing,] related cause of action." (§ 426.30, subd. (a); *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 952 (*Align Technology*).) The rule "is designed to prevent 'piecemeal litigation,'" because the "'law abhors a multiplicity of actions.'" (*Align Technology*, at p. 959; *Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436 (*Carroll*); *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 993.) The rule operates as an affirmative defense and completely disposes of a claim or entire action to which it applies. (*Heshejin*, at p. 993.) As pertinent here, the rule not only applies when a party does not file a cross-claim *to a complaint* in prior litigation, but also applies when a party does not file a cross-claim to a *cross-complaint* in prior litigation. (§ 426.10, subds. (a) & (b) [compulsory cross-complaint rule applies to cross-complaints]; *Align Technology*, at pp. 959-961 [same].)

---

that issue because Clean Up makes no argument as to how it can cure the legal defect in its pleading.

As its name suggests, the compulsory cross-complaint rule bars a claim by a party in the current litigation if (1) that claim is related to a claim asserted *against that party* in prior litigation, and (2) that claim existed at the time the party filed its answer in the prior litigation. (§ 426.30, subds. (a) & (b)(2); *Carroll*, *supra*, 33 Cal.App.4th at pp. 1435-1436 ["section 426.30 precludes [a plaintiff] from bringing a new action based on claims arising from the same transaction that served as the basis for [a defendant's] cross-complaint in the first action"]; *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 81 (*ZF Micro*); *Align Technology*, *supra*, 179 Cal.App.4th at pp. 965, 969.) With regard to the first requirement, two claims are "related" if they "arise[] out of the same transaction, occurrence, or series of transactions or occurrences" (§ 426.10, subd. (c)); because the compulsory cross-complaint rule was meant to apply "expansive[ly]," claims arise out of the same transaction or occurrence as long as they are "logically related"; they need not rest on identical factual allegations. (*Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777 [noting logical relationship is "expansive"]; *Align Technology*, at pp. 960, 965; *Saunders v. New Capital for Small Business, Inc.* (1964) 231 Cal.App.2d 324, 338-339 (*Saunders*) [rule does not apply if claims are "devoid of any logical interrelation"]; *ZF Micro*, at pp. 82, 84 [logical relationship construed "broadly"].)

We independently agree with the trial court that Clean Up's sole claim is barred by the compulsory cross-complaint rule.

Clean Up's UCL claim in the current lawsuit is logically related to the Arrow companies' cross-claims for UCL violations in the first lawsuit. Indeed, Clean Up does not arduously dispute this point—and for good reason: The Arrow companies' prior

9

cross-claims and Clean Up's current claim effectively mirror one another, at their core attacking the parties' competitive relationship during nearly the same time period. (See *Align Technology*, *supra*, 179 Cal.App.4th at pp. 961-962 [claims that "arose out of the employment relationship between the parties" had a "logical relationship"]; *Saunders*, *supra*, 231 Cal.App.2d at pp. 338-339 [same, as to claims arising out of the parties' "subsisting fiduciary relationship"]; cf. *ZF Micro*, *supra*, 5 Cal.App.5th at pp. 83-84 [claims not logically related where claims arise from conduct during different time periods].)

Clean Up's UCL claim in the current lawsuit also *existed* at the time it filed its answers to the Arrow companies' cross-claims in October 2018. That is because the UCL claim that Clean Up now presses is identical to the UCL claim Clean Up alleged in its original lawsuit as far back as February 2018. If it existed in February 2018, it existed eight months later in October 2018.

## II. Clean Up's Counterarguments

Clean Up raises what boils down to three arguments in response to our conclusion.

First, Clean Up argues that the compulsory cross-complaint rule does not apply here because—even if the substance of the claims are logically related—the *parties* are not the same. Specifically, Clean Up notes that its current complaint is against (1) Arrow Services, (2) Arrow Disposal, and (3) Tahmizian, but the only parties who filed cross-complaints in the first litigation were (1) Arrow Services and (2) Arrow Disposal. Even if we assume for the sake of argument that the compulsory cross-complaint rule requires a complete identity of *parties*, that requirement is met here once we give effect, as we must, to Clean Up's own allegations in this lawsuit that Arrow Services, Arrow

10

Disposal, and Tahmizian are "alter egos" of one another, and hence all the *same party*. Clean Up devoted several pages of its operative complaint to its allegations that defendants "operate not as individual persons and entities, but rather as one," and that Tahmizian "personally orchestrated the . . . disregard for any separateness . . . for his own personal advantage and improper purposes." We are obligated to accept these allegations as conclusive. (*Mitchell*, *supra*, 45 Cal.App.5th at p. 628 ["'An admission in a pleading is *conclusive* on the pleader'"].) Clean Up's sole response is to accuse the trial court and defendants of employing something called an "impermissible defensive alter ego analysis." Suffice it to say, that is not "a thing" in the law (and none of the "ten California published opinions" Clean Up cites says it is). Clean Up essentially argues that it should be able to simultaneously allege that defendants *are* and *are not* alter egos of one another. Suffice it to say, taking factually inconsistent positions *is* "a thing" in the law; unfortunately for Clean Up, it is a prohibited thing.

Second, Clean Up argues that the compulsory cross-complaint rule does not apply because *Arrow Services* was a corporation in "suspended" status (by the Franchise Tax Board) at the time that Clean Up filed its answer to Arrow Services' cross-complaint in October 2018. While a corporate party is suspended, any obligation to respond to a cross-complaint by that party becomes voluntary (rather than compulsory), such that the compulsory cross-complaint rule does not apply. (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 844-845.) Clean Up is right on the facts and law as stated above, but these points do not negate the applicability of the compulsory cross-complaint rule in this case. That is

11

because Arrow Services' suspended status was lifted in August 2020, at which point in time Clean Up's duty to respond to Arrow Services' cross-complaint became compulsory (*Electronic Equipment*, at p. 846 [a suspended corporation's acts in litigation become "retroactively validated once reinstatement [of corporate status] occurs"]), such that Clean Up's failure to file a cross-complaint in the 21-month window between August 2020 and May 2022, when the Arrow companies' cross-complaints were dismissed, now bars the second lawsuit under the compulsory cross-complaint rule. For the first time in its reply brief on appeal, Clean Up argues that the cross-complaint filed by *Arrow Disposal* was a "fraudulent sham" meant to serve as a "placeholder" during the pendency of *Arrow Service*'s suspension. Not only is this argument waived due to its untimely assertion (*Piedmont Capital*, *supra*, 94 Cal.App.5th at p. 970, fn. 6; *Gallo*, *supra*, 81 Cal.App.5th at p. 646), it is also irrelevant to the application of the compulsory cross-complaint rule because the applicability of that rule does not turn on the parties' motives.[6]

---

[6]  Clean Up's argument is also factually unsupported. While we grant Clean Up's request for judicial notice of Arrow Disposal's dismissal of two *individuals* from its cross-complaint shortly after Arrow Services' corporate status was reinstated (Evid. Code, §§ 452, subd. (d), 459, subd. (a)), that dismissal does nothing to substantiate the theory that Arrow Disposal's cross-complaint against *Clean Up* was a sham. Also, we pause to note that Clean Up is asking us to take judicial notice of new items for the first time in conjunction with its filing of a reply brief while *simultaneously* lambasting the trial court for doing precisely the same thing. At best, Clean Up's inconsistent positions are unpersuasive; at worst, they are duplicitous.

Third and lastly, Clean Up argues that the trial court violated its due process rights by taking judicial notice in this lawsuit of two categories of pleadings from the first lawsuit—namely, (1) Arrow Disposal's cross-complaint, which was the subject of defendants' second request for judicial notice; and (2) the two answers Clean Up filed in response to the Arrow companies' cross-complaints in the first lawsuit, of which the trial court took judicial notice on its own.

The trial court did not abuse its discretion in judicially noticing these filings. Such pleadings are certainly an appropriate subject of judicial notice. (See Evid. Code, § 452, subd. (d) [judicial notice may be taken of "[r]ecords of . . . any court of this state"].) The trial court did not otherwise commit any prejudicial procedural errors in taking judicial notice. The court did not abuse its discretion or violate due process in taking judicial notice of Arrow Disposal's cross-complaint: Judicial notice may be taken at any time as long as the parties are given an opportunity to respond. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449; Evid. Code, § 453 [trial court "shall" take judicial notice if adverse party given sufficient notice of request].) Here, Clean Up had ample opportunity—including at two hearings with a 60-day gap between them—to respond to defendants' request for judicial notice of Arrow Disposal's cross-complaint and even filed an objection to that request; the trial court did not err in granting the request over Clean Up's objection. Clean Up complains that it was lulled into inaction because the trial court initially said it would deny judicial notice and then subsequently changed its ruling. But this complaint is based on a misreading of the record, as the trial court initially denied defendants' third and fourth

13

requests for judicial notice; the court's sole ruling on the second request was to grant it. The court also did not abuse its discretion or otherwise violate due process in taking judicial notice, on its own, of the two answers Clean Up filed in response to the Arrow companies' cross-complaints. Procedural errors in taking judicial notice can be harmless (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569), and Clean Up cannot credibly complain that it was prejudiced by the trial court's decision to judicially notice *Clean Up's own prior filings*. What is more, any error in the procedures followed by the trial court is now irrelevant because defendants asked *this Court* to take judicial notice of Clean Up's answers, and because Clean Up had the opportunity to object to *that* request and did not. Thus, the answers are properly before us by virtue of our independent act of taking judicial notice.

**DISPOSITION**

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ